DAVID H. CARROLL, RESPONDENT, *v.* JOHN PETTIT, APPELLANT.

*Principal and broker — sale of real estate — interference of principal after the discovery of a purchaser by the broker — right of the broker to commissions.*

In an action by a broker to recover from the seller of real estate a commission for procuring a purchaser, under employment by the seller, the main question was as to whether the seller had interfered with the negotiations undertaken by the broker in his behalf, and thus unlawfully prevented the broker from performing his contract of employment:

*Held,* that a letter written by the broker to the business manager of the purchaser, concerning the proposed purchase, and in the course of the negotiations therefor, and competent as a part of the *res gestæ* to show what the broker did under his employment towards procuring a purchaser, was not rendered incompetent because it incidentally corroborated the testimony of the broker upon a material point as to the disputed date of an interview between himself and the seller.

When a principal intervenes and interferes with the prosecution of the employment on the part of his broker, an exception is created to the general rule of law that the broker must perform his contract of employment to become entitled to commissions, and the broker is not in such case compelled to prove a complete performance on his part, but may recover his commissions in the same way as though he had completely performed his undertaking.

Appeal by the defendant, John Pettit, from a judgment of the Supreme Court, in favor of the plaintiff, entered in the office of the clerk of the city and county of New York on the 16th day of March, 1892, on a verdict for $1,269.11, recovered at circuit, and from an order denying a motion for a new trial, entered in said clerk's office on the same day.

The action was brought to recover commissions which the plaintiff claimed to have earned in negotiations for a sale of real estate.

The letter of December 20, 1889, from the plaintiff to the business manager of Mr. Stokes, the purchaser of the property in suit, referred to in the opinion, is as follows:

<div align="center">

D. H. CARROLL,

Real Estate.

Estates Taken Charge of and Property Rented,

Loans Negotiated,

No. 291 Broadway,
</div>

Cor. Reade Street,

Over Tradesmen's Bank.

<div align="right">New York, 20 *Dec.*, 1889.</div>

Mr. A. B. Elliman:

Dear Sir. — Thanks for your letter of yesterday. Pettit has *just* called here; from what he says he is short of money, and I *think* if you care to reconsider the matter of 92 William St., that I may get him to as low as $115,000. He explains the offer of 125,000, which, he says, was made in this way, that the purchaser wished a second mortgage left on the property, and as money is a great necessity to him at the present, he declined the proposal. Kindly talk with Mr. Stokes at once in reference to the matter, and let me know *to-day* if convenient. When talking with Pettit I said positively to him that I would not approach you again on the subject unless at a much lower figure than first proposed.

<div align="right">Very truly yours,

D. H. CARROLL.</div>

The letter to the plaintiff from the business manager of the purchaser, referred to in the opinion as the letter which the plaintiff testified he read to the defendant, and from which he claimed the defendant learned the name of the purchaser, is as follows:

<div align="center">

54 WALL STREET,

NEW YORK, *Dec.* 13, 1889.
</div>

D. H. CARROLL, Esq., 291 *Broadway :*

DEAR SIR. — Thanks for yours of the twelfth. I return herewith John Pettit's letter. Can you find out *exactly* what he paid for the property? We are seriously considering the matter. Mr. Stokes will return on Monday.

<div align="center">

Yours truly,

A. B. ELLIMAN.
</div>

*Treadwell Cleveland,* for the appellant.

*George V. N. Baldwin,* for the respondent.

O'BRIEN, J. :

This was an action by a real estate broker against the defendant to recover a commission claimed to be due upon a sale of the defendant's real estate. The complaint alleged and evidence was offered tending to support the employment of plaintiff by the defendant under which the former undertook the sale of the property and procured a purchaser, and that, while in the midst of the negotiations and when they had almost reached a favorable conclusion, the defendant learning through plaintiff of the person who contemplated purchasing, surreptitiously approached such purchaser and concluded the sale so procured by the plaintiff without the latter's knowledge.

On the part of the defendant the defenses were that the plaintiff was not employed and that the defendant made the sale himself.

Upon the first question, as to the employment of the plaintiff by defendant, the evidence was sufficient to justify the conclusion reached by the jury. The serious question, however, presented upon this appeal is, assuming such employment, did the defendant interfere with the negotiations undertaken by the plaintiff in his behalf and thus unlawfully prevent the plaintiff from performing the contract of employment?

The evidence shows that plaintiff did not effect the sale and his right to compensation must depend not upon his having performed

his contract, but upon the conclusion to be reached on the testimony whether such performance was prevented by the action of the defendant. No question arises but that all the details, in regard to the leases, amount of mortgages and the time when due, were furnished by the defendant to the plaintiff and by the latter to the purchaser; and it is equally beyond dispute that, without having terminated in any way the plaintiff's employment and whilst the negotiations were pending, the property was sold by the defendant to the very purchaser to whom it had been offered and who had been induced to consider the property by the plaintiff.

The contract itself was made on the twentieth of December, subsequent to an interview on the same day which the plaintiff claims he had with the defendant and at which interview, as claimed, the defendant obtained the name of the purchaser. The defendant denied this interview of the twentieth placing it some days prior to that date; but the letter from the plaintiff to the manager or agent of the purchaser confirms plaintiff's version that an interview did take place between plaintiff and defendant on the twentieth. This letter was objected to and it has been strenuously insisted upon this appeal that its admission was an error so great as to call for a reversal of the judgment. That it had considerable bearing upon the conclusion of the jury, as to the credibility of the two statements made respectively by the plaintiff and defendant, there can be no doubt, and, if its admission was erroneous, the verdict should not be permitted to stand.

The ground of error assigned with respect to this letter is that it was incompetent because written by the plaintiff to a third person, and that it could not be resorted to for the purpose of showing that the testimony of plaintiff on the stand was corroborated by a former statement to the same effect made to the purchaser. If the letter was admitted for this reason alone, we should be inclined to agree with the defendant; but, we think, that in his argument the appellant overlooks the fact that it was competent, as part of the *res gestæ*, for plaintiff to show what he did under his employment towards procuring a purchaser. And this letter, written as it was to the manager of the purchaser, the very person who represented the purchaser in the negotiations with the broker, was just as competent as proof of the efforts made, as it would have been for the

plaintiff to have personally testified to what he did under the contract of employment. The letter, therefore, being competent for one reason, is not rendered incompetent because it; incidentally corroborates the testimony of plaintiff upon a material fact as to the date of the interview between the parties.

The plaintiff testified that at this interview he read to the defendant the letter received from the purchaser's agent, in which the name of the purchaser appeared; and from this, it was claimed that the defendant obtained knowledge of the purchaser. The defendant insisted that such knowledge was derived through his son, and from an examination of the Real Estate Record; and in this he was supported by the testimony of his son. And were there no other facts in the case bearing upon the good faith of the defendant in personally conducting the negotiations, we think that the basis for a recovery would have been slight. In other words, while the plaintiff's testimony was susceptible of the view that the knowledge of the purchaser was thus obtained from the letter which he claims he received from the manager of the purchaser, and which he testified was read, still, the contrary evidence showing that prior to that time the knowledge was derived from another source, corroborated as it was by the testimony of the son, would have a tendency to preponderate in defendant's favor. Assuming, however, that, entirely independent of the plaintiff, the defendant had, from an examination of the Real Estate Record, obtained the name of the purchaser, because the latter had recently purchased the property adjoining, still, if on the twentieth the defendant obtained from the plaintiff knowledge that the person whom the broker had secured as a proposed purchaser was the same person of whom he had learned from the Real Estate Record, the defendant owed some duty to the plaintiff of either terminating the agency or notifying him that he intended personally to conduct future negotiations.

But, apart from this, the testimony shows that the plaintiff's work had been fruitful, not only in directing the purchaser's attention to the property, but in affording him information as to incumbrances thereon, and as to the price at which it could be obtained, which rendered it in all probability alone possible for the defendant, within a space of a few hours to consummate the sale. As to what occurred upon reaching the purchaser's office defendant thus testifies: "At

Mr. Stokes' office I saw Mr. Elliman; I agreed with him upon the price for this property." And though he further testified that he never heard of Mr. Carroll in connection with Mr. Stokes as the purchaser until almost the actual signing of that contract, it is made evident, not only by his testimony, but by the testimony of Mr. Elliman, the manager for Mr. Stokes and the person who conducted the negotiation, that Mr. Elliman himself told the defendant that Carroll had presented the property to them, and " that he was, perhaps, entitled to a commission."

We think, upon this evidence, it was properly a question to submit to the jury as to whether or not plaintiff, not only by the negotiations with the defendant in obtaining from him a reduction of the original price that he asked for the property, but also in getting the purchaser to favorably consider it, had brought the negotiations to a point where they would undoubtedly have resulted in a contract, when the defendant personally took up the negotiations and, with the advantage he had obtained from the plaintiff's work, succeeded in selling the property.

This question and the rule of law applicable thereto were clearly and fully presented to the jury by the charge of the trial judge, in addition to stating the general rule that there can be no recovery on the part of a broker, unless he shows to the satisfaction of the jury that he brought the parties together and was the procuring cause of the sale, he then presented the limitation or exception to this rule in the following language : " It is claimed in this case that the exception has been proven, and the whole theory of the plaintiff is, that performance of duty, which, under ordinary circumstances, would be required of a broker, was prevented by the interference of the defendant himself. If that be so, and if, on the facts of this case, you find that Carroll was prevented from going on with the transaction and that Pettit took it from him, deprived him of the benefit of it, took it out of his hands, knew that he was doing so, put himself in the place of the broker, knowingly acquired to himself the benefit of the services of the broker, and thus terminated the action of the broker so that he could go no further, then the case presents that exception which was relied upon by the plaintiff as being the foundation of the action which he has now brought."

There being sufficient evidence in the case to present this question,

all that remains is to determine whether this rule of law, laid down by the trial judge, was correct. He, in effect, charged that when a principal intervenes and interferes with the prosecution of the employment on the part of the broker, an exception is created to the general rule of law, and that the broker is not compelled to prove a complete performance on his part, but that he may recover his commissions in the same way as though he had completely performed his undertaking. This statement of the law we regard as supported by many cases. And were it a new question, we fail to see why it is not a just measure of the duty which the principal owes to the agent whom he has employed for any specific purpose.

A well-considered case, in which all the principles applicable to the obligations of principals and brokers are clearly defined is that of *Sibbald* v. *Bethlehem Iron Company* (83 N. Y., 384), from the opinion in which we quote, upon the question here presented:

"Usually the broker is entitled to a fair and reasonable opportunity to perform his obligation, subject of course to the right of the seller to sell independently. But that having been granted him, the right of the principal to terminate his authority is absolute and unrestricted, except only that he may not do it in bad faith and as a mere device to escape the payment of the broker's commissions. Thus, if in the midst of negotiations instituted by the broker, and which were plainly and evidently approaching success, the seller should revoke the authority of the broker with a view of concluding the bargain without his aid and avoiding the payment of commissions about to be earned, it might well be said that the due performance of his obligation by the broker was purposely prevented by the principal. But if the latter acts in good faith, not seeking to escape the payment of commissions, but moved fairly by a view of his own interest, he has the absolute right before a bargain is made, while negotiations remain unsuccessful, before commissions are earned, to revoke the broker's authority, and the latter cannot thereafter claim compensation for a sale made by the principal, even though it be to a customer with whom the broker unsuccessfully negotiated, and even though to some extent the seller might justly be said to have availed himself of the fruits of the broker's labor."

We think that the evidence warranted the submission of the question to the jury, as was done by the court, and that we should not

entrench upon their province in disturbing a conclusion reached by them upon disputed evidence, where the preponderance the other way was not so great as to have justified a direction of a verdict for the defendant.

We are of opinion, therefore, that the judgment appealed from should be affirmed, with costs and disbursements.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Judgment affirmed, with costs and disbursements.