## LEWIS HANCOCK v. WILLIAM H. STACY.

### No. 2020.  Decided March 9, 1910.

**1.—Agency to Sell—Revocation.**

The owner of property who has authorized an agent to make sale thereof upon a commission may revoke the agency at any time; but if the agent had been given a definite time within which to make sale and his authority was revoked for no fault of his and after he had rendered services in negotiating a sale before the expiration of such time, the principal will be liable for damages irrespective of any bad faith by him in the revocation of the agency. (Pp. 225, 226).

**2.—Same—Measure of Damages.**

Where the commission of an agent for the sale of land was fixed by the contract and the jury found that the sale, which was effected by the owner after his revocation of the agency, was brought about by the services of the agent and that such services were reasonably worth the amount of the agreed commission, a verdict for that amount is supported, whether the measure of damages be held to the agreed compensation for the reasonable value of the services. (Pp. 226, 227).

**3.—Agency—Revocation—Sale—Compensation of Agent.**

Evidence, in a case where the owner of property, after having revoked the authority given a land agent to make sale of it, concluded a sale to one with whom the agent had been conducting negotiations, considered and held to support findings by the jury to the effect that the revocation took place before the expiration of the time given the agent by the contract to effect a sale, and that his efforts were the procuring and efficient cause of the sale made by the owner after the revocation.  (Pp. 221–227).

**4.—Practice on Appeal—Harmless Error—Special Issues.**

Where findings of the jury upon certain special issues are supported by the evidence and require a judgment for plaintiff, errors to the prejudice of defendant in submission of other special issues become immaterial upon his appeal.  (Pp. 227, 228).

**5.—Contract—Intent.**

Where the language used by parties to a contract with the attending circumstances were such as justified the one in believing that the other had made with him a contract and he acted upon it, the other was bound by the legitimate effect of his language and acts rather than by his understanding of their import. (P. 228).

Error to the Court of Civil Appeals for the Third District in an appeal from Travis County.

Stacy sued Hancock and recovered judgment.  Defendant appealed and upon affirmance obtained writ of error.

*Jas. H. Robertson* and *Fiset & McClendon,* for plaintiff in error.— The court erred in refusing to instruct the jury to bring in a

verdict for the defendant at the conclusion of the plaintiff's evidence, because it appeared from the uncontroverted evidence that the defendant had on or about June 1, put his property in the hands of the plaintiff for sale at $150,000, and that no time for selling was agreed upon, and no exclusive agency was given; that the defendant waited a reasonable time for the plaintiff to make a sale and then in good faith withdrew the property from the market; that two months thereafter the defendant again put it upon the market and sold it at a lower price through another agent; that there was no testimony from which the jury could conclude as reasonable men, that the defendant acted, in withdrawing the property from the plaintiff and afterwards selling it through another agent, otherwise than in the utmost good faith. Neal v. Lehman, 11 Texas Civ. App., 461; Duval v. Moody, 24 Texas Civ. App., 627; Evans v. Gay, 74 S. W., 575; Land Mortgage Bank v. Hargis, 70 S. W., 352; Pryor v. Jolly, 91 Texas, 86; Caddigan v. Crabtree, 55 L. R. A., 77, 79; Brackenridge v. Claridge, 91 Texas, 534; Sibbald v. Iron Co., 38 Am. Rep., 441; Earp v. Cummins, 93 Am. Dec., 718; Mechem on Agency, paragraphs 965, 966, 969; see also Mechem, page 795, note second column at the bottom of page, 796, note 2, page 798, paragraph 967, page 802, and note 3, page 803, notes 1 and 2; 2 Clark & Skyles on Agency, par. 779; Glenn v. Davidson,, 35 Maryland, 365; McGavock v. Woodlief, 20 Howard, 221; O'Bryan v. Gilliland, 23 S. W., 245. See also as to when an action for quantum meruit in agency cases will lie, McDonald v. Cabiness, 102 S. W., 721; s. c., 100 Texas, 615. As to duty of owner where there are two agents and one actually completes the sale, Ahern v. Baker, 34 Minn., 98; Henderson v. Vincent, 84 Ala., 99; Sussdorf v. Schmidt, 55 N. Y., 321; Scott v. Lloyd, 19 Colo., 401; Smith v. McGovern, 652 N. Y., 575; Glasscock v. Vanfleet, 100 Ten., 603; Vreeland v. Vetterlein, 33 N. J. L., 247; Platt v. Johr, 9 Ind. App., 58; Eggleston v. Austin, 27 Kan., 247; McGuire v. Carlson, 61 Ill. App., 295; Daniel v. Land Co., 9 App. D. C., 483.

If Stacy was given, as he contends, a definite time in which to complete the sale, that is, was given till late in the fall, and he did not sell during that time, he would have no claim for commissions. Neal v. Lehman, 11 Texas Civ. App., 461; Pryor v. Joly, 91 Texas, 81; Brackenridge v. Claridge, 91 Texas, 534; Duval v. Moody, 24 Texas Civ. App., 627; Evans v. Guy, 74 S. W. Rep., 575; Mechem on Agency, paragraphs 965, 966. December was not a fall month, and a sale at that time was not a breach of plaintiff's contract.

*Gregory & Batts, Doom & Doom,* and *George S. Wright,* for defendant.—Where an agency contract provides that a broker may have a specified time within which to negotiate a sale for a commission, and before that time expires the principal withdraws the property from the market, and it is shown that the proposed purchaser with whom the broker has been negotiating would have purchased under the agency contract by reason of the efforts of such broker within the time specified, but for the action of the principal in withdrawing the property from the market, the broker is entitled to his commissions. McLane v. Maurer, 28 Texas Civ. App., 75; Stringfellow v. Powers, 4 Texas

Civ. App., 199.; Luhn v. Fordtran, 115 S W., 667; McLane v. Good, 68 S. W., 707; Greer v. Cole, (Mo.) 24 S. W., 1058; Glover v. Anderson, 127 Mo., 367.

When an agent is the procuring cause of a sale, he is entitled to his contract commission, even though the sale be actually concluded by another agent, and if no commission be agreed upon, he is entitled to reasonable compensation. Groves v. Woodward, 78 Texas, 95; McGuire v. Carlson, 61 Ill. App., 205; Carroll v. Petitt, 22 New York Sup., 260; Hadley v. Savings Bank, 44 L. R. A., 321; 4 Am. & Eng. Ency. of Law, p. 977.

There being a contract to sell, and Stacy being the moving and procuring cause of the sale, he was entitled to recover his contract commissions, or at least on the basis of a quantum meruit, even though the owner was not guilty of fraud in relation to the sale and though he had no previous knowledge that the purchaser had been induced to buy through Stacy's efforts and even though the terms of the sale were somewhat altered. McDonald v. Cabiness, 98 S. W., 943; Graves v. Baines, 78 Texas, 92; McDonald v. Cabiness, 100 Texas, 615; Montgomery v. Amsler, 122 S. W., 307.

The property having been sold by Hancock to the purchaser found by Stacy, and Stacy having been the procuring cause of the sale, he was entitled to reasonable compensation for his services even though the terms of the sale were changed, as the benefit of his work was taken advantage of and utilized. McDonald v. Cabiness, 100 Texas, 617; Montgomery v. Amsler, 122 S. W., 307.

MR. JUSTICE BROWN delivered the opinion of the court.

Stacy instituted this suit against Hancock in the District Court of Travis County to recover compensation for his services rendered in procuring a purchaser for certain lots in the city of Austin. It is unnecessary to state the pleadings in detail; the allegations were sufficient to present the issues submitted A general demurrer and special exceptions to the petition were urged and overruled by the court, but the objections presented by them that are material to a determination of this case are embraced in other assignments and will not be treated separately.

The evidence is sufficient to authorize a jury to find these facts. Stacy was a real estate agent and had been so engaged in the city of Austin for about twenty years. Hancock was a citizen of Austin also and owned valuable property situated on the corner of Sixth Street and Congress Avenue, fronting 150 feet on the avenue. The lots were occupied at the time by buildings, which were being rented to Scarbrough & Hicks and others. In February, 1904, Stacy had a conversation with Hancock with reference to the sale of this property, but no definite understanding was reached until about the first of June, 1905, when Stacy went to Hancock's place of business and presented to him a proposition to allow Scarbrough & Hicks to build upon the lots, putting as much money in the building as the lots were worth, and the two to own the property jointly. This proposition was rejected by Hancock, and Stacy then asked him to put a price on the property. To which Hancock replied, in substance, that

he would not sell it for anything but a fancy price, and he didn't think anybody would pay his price. Stacy insisted that he name his price and Hancock did so at $150,000. Stacy asked him if he would take that for the property and pay him five percent commission for making the sale and Hancock replied that he would. Stacy went at once to see Scarbrough and told him that he had at last gotten a definite price on the property, and stated the price, $150,000, to which Scarbrough replied, in substance, that it was too much, and that he would not pay such a price for it. This occurred in the first part of June, 1905. We deem it unnecessary to detail the different interviews that were had, but the undisputed evidence shows that Stacey was active in his efforts to make the sale to Scarbrough and to induce him to come to the terms proposed, visiting and talking to him frequently about it. Stacy told Hancock that Scarbrough was the prospective purchaser. Hancock left the State and Stacy continued his negotiations with Scarbrough. About the 10th of July Hancock wrote to Stacy the following letter: "Dear Sir: Have you heard anything more from your parties who wanted my property on the corner of Sixth Street and the Avenue? If there are any developments, address me as below. Truly yours, Lewis Hancock, 81 Lathrop St., Beverly, Mass." Stacy replied by this letter: "July 10, 1905. Mr. Lewis Hancock, 81 Lothrop St., Beverly, Mass. Dear Sir: Replying to your favor of the 5th instant, I beg to advise that I have had two conferences with my parties and believe I have made some progress though it would seem almost an impossible undertaking to secure the large price demanded by you. I believe it would facilitate the trade if I could offer an unusually low rate of interest on deferred payments. If my parties, who are perfectly responsible, would take the property at your price, $150,000 and pay $50,000 cash, would you accept vendor's lien notes for $100,000, payable on or before ten years at five percent interest? Please wire your answer immediately upon receipt of this, as I expect to have another meeting with the parties the last of this week. Your truly, Wm. H. Stacy." In reply to Stacy's letter Hancock sent this telegram dated at Boston, Massachusetts, July 14, 1905, and addressed to W. H. Stacy, Austin, Texas: "Time too long, rate too low. Would rather shade price. Lewis Hancock." After this telegram was received Stacy continued his negotiations with Scarbrough until early in the month of August, when Scarbrough told Stacy that he would not consider the matter further until late in the fall when he would be able to determine what the crops would be and the prosperity of his business. About the last of August Hancock returned from his trip North. Scarbrough was away at the time. Stacy met Hancock on the street and told him that his party was out of town and that he had determined not to consider the matter further until late in the fall, but he, Stacy, had hopes of making the sale. Hancock replied: "That's all right; I have no use for the money." Subsequently to this conversation and early in September Hancock went North again, and, after he had gone, Scarbrough returned, when Stacy renewed the negotiations, and Scarbrough said: "I have determined to buy this property, even at that high price, and I want to know what authority you have from

Mr. Hancock to make the sale." Stacy replied that he was authorized to sell it but that he had no authority in writing except a letter from Hancock in which he recognized Stacy's agency and he showed the letter to Scarbrough, but it did not satisfy him, he was afraid it would not bind Hancock to the trade. This conversation occurred about the 20th of September. A few days after that Stacy found on his desk at his office a copy of a message from Hancock to some one in the bank, whose name he did not remember, as follows: "Tell Stacy and Goldbeck that my property is not for sale;" and, on the next day Stacy received the following telegram: "Sept. 23, 1905. William H. Stacy, Austin, Texas. My property, Sixth Street and Avenue, is not for sale. Lewis Hancock." Upon receipt of this telegram Stacy went to Scarbrough and informed him of the fact Hancock had withdrawn the property from sale and that nothing more could be done until his return. Hancock returned to Austin about the 16th of November, but he and Stacy did not meet until the first day of December. Stacy did not know up to that time that Hancock was in the city, and when they met on the street the latter said to Stacy: "Did you get my telegram?" to which Stacy replied: "Yes, I could have closed that sale if you hadn't wired me to take the property off the market." "I changed my mind," replied Mr. Hancock, "and decided I would not sell; my wife did not want me to sell, and the property is irrevocably off the market; she doesn't want me to sell; it is not for sale." This conversation occurred on the first day of December, and, on the next day Stacy, while in camp with the State Militia, saw in the daily paper a notice that this property had been sold. Thereupon Stacy addressed to Hancock the following letter: "Dear Sir: I note by this morning's paper that you have sold your property, corner of Congress Avenue and Sixth Street, to Mr. E. M. Scarbrough for $145,000. As I originally introduced Mr. Scarbrough to you as a purchaser for the property and have been working with him ever since to conclude a sale, as is well known to you, I consider that you had no right to sell the property to Mr. Scarbrough either direct or through another agent without paying me the usual agent's commission, particularly as the transaction would have been completed by me but for misleading statements made by you to the effect that you did not desire to complete it. Please advise me by bearer whether or not you acknowledge liability to me for commission to the amount of five percent as agreed between us some time since. I ask this in order that I may be able to determine what steps may be necessary to take to protect myself, as my time is almost continually occupied at camp and I will have very little opportunity to attend to my personal business until after the 15th instant." And received this reply: "General W. H. Stacy, Austin, Texas, Dear Sir: I have yours of today requesting me to advise you whether or not I acknowledge liability to you for commission to the amount of five percent on the purchase price paid to me by E. M. Scarbrough for the Congress Avenue property sold to him by me yesterday. In reply I beg to state that I recognize no liability whatever to you for any commission in connection with said sale. I am surprised that you should make a suggestion even of com-

mission, as I can not conceive of any facts which would put you in line for such a claim against me."

Lewis Goldbeck was an agent of Lewis Hancock's for the renting of the property occupied by Scarbrough, and, after Hancock's return from the North, was in Scarbrough's place of business when the latter said: "Goldbeck, this property here has been talked about for sale for six months, and if anybody can sell it you ought to be able to sell it yourself." To which Goldbeck replied: "I will see about it." Goldbeck then came back and said to Scarbrough that he had the right to sell the property, and Scarbrough made inquiry as to what was wanted for it, whereupon Goldbeck stated the price that he demanded, and satisfied Scarbrough that he had written authority to sell, and Scarbrough said: "Well, Mr. Goldbeck, that is the way to talk, you are in a position for a man to talk to." It is unnecesary for us to detail the different propositions; Scarbrough seemed to be ready to buy and he and Goldbeck came to an agreement for the sale at $145,000. Hancock had given Goldbeck authority to sell the property and was to pay him two percent commission on the price for which he might sell. The date of the negotiations between Goldbeck and Scarbrough is uncertain, the latter stating that it was probably fifteen days before the date of the deed, which was on the 8th of December, thus placing the date at about the 23d of November. Further details of the transaction between Hancock and Goldbeck are immaterial to the issue presented to this court.

This case was at the request of Hancock's counsel submitted on special issues as copied below, and the jury made answer to each one of the issues upon which the judgment of the court is based.

"1. Was the plaintiff, William H. Stacy, the procuring cause and efficient means which induced E. M. Scarbrough to purchase said property, the sale of which is involved in this case, and which enabled defendant to sell the same to the said E. M. Scarbrough? Yes.

"2. Was it mutually understood or contemplated by plaintiff and defendant, under the contract of June 1, 1905, that defendant should pay plaintiff a commission of five percent upon the purchase price of said property, if said property should be sold by plaintiff for a sum satisfactory to defendant, but less than $150,000. Yes.

"3. Was there any subsequent contract or agreement or mutual understanding between plaintiff and defendant, whereby it was mutually understood by plaintiff and defendant that defendant should pay plaintiff a commission of five percent upon the purchase price of said property, if said property should be sold by plaintiff for a sum satisfactory to defendant, but less than $150,000? Yes.

"4. What was the reasonable value of the plaintiff's services in procuring the sale of said property to said Scarbrough, if you have found that he did so cause and procure said sale? Five percent of sale.

"5. Was it mutually agreed between plaintiff and defendant sometime in the month of August, 1905, that plaintiff should have until late in the fall of 1905, in which to find a purchaser for said property, and that plaintiff should have the agency for the sale of said property until late in the fall? Yes.

"6. Was the 2d day of December, 1905, 'late in the fall' in the sense in which such term was used by plaintiff and defendant, if it was so used? Yes.

"7. Was the action of defendant in taking his property off the market and in giving notice to plaintiff that said property was no longer for sale, prompted and caused by any purpose on the part of defendant to afterwards sell said property to said E. M. Scarbrough without paying to plaintiff a commission on said sale? Yes.

"8. Did the plaintiff at any time between September 23, 1905, and December 2, 1905, acquiesce in and consent to the defendant's withdrawal of said property from the market? No.

"9. Did the defendant on September 23, 1905, have knowledge that plaintiff had, since June 1, 1905, been negotiating with E. M. Scarbrough for the sale of said property to said Scarbrough? Yes.

"10. Did the defendant, at the time he contracted to sell said property to E. M. Scarbrough, have knowledge that plaintiff had, since the date of his contract of agency to sell said property, been undertaking to sell said property to said Scarbrough? Yes.

"11. Did the defendant at the time that he entered into the contract with L. N. Goldbeck to find a purchaser for said property for two percent commission, in good faith believe that the plaintiff had acquiesced in and consented to his previous withdrawal of said property from the market? No.

"12. Did defendant at the date of his said contract with Goldbeck, know that E. M. Scarbrough was a probable purchaser of said property, and that plaintiff had been negotiating with said Scarbrough for the sale of said property? Yes.

"13. Was the said E. M. Scarbrough, prior to September 23, 1905, through the efforts of plaintiff, ready, able and willing to purchase said property and pay therefor the sum of $150,000 and would he have so purchased same and paid said sum therefor had defendant not withdrawn said property from the market? Yes.

"14. If the property had not been taken out of the hands of Stacy by Hancock, would Stacy have completed a sale of same to Scarbrough by late in the fall of 1905 for $145,000? Yes.

"The appellant's eleventh, thirteenth and fourteenth special charges, which were given with the jury's answers thereto, were as follows:

"11. Was the conduct or words of the said Stacy in his dealings with said Hancock after said Hancock had notified said Stacy that the property was withdrawn from sale, such as were reasonably calculated to and did lead the said Hancock to believe that said Stacy acquiesced in said termination of said agency, and considered said agency at an end? Answer yes or no." Answer: "No."

In deference to the verdict of the jury, this court must treat the contract between Hancock and Stacy as having been extended so as to give Stacy the privilege of selling the property at any time up to "late in the fall." It is not claimed by the plaintiff in error that the revocation of the authority to sell was based upon any fault or failure on the part of Stacy, therefore, in withdrawing the property from the market and terminating Stacy's authority to sell. Hancock

violated the contract between them, which gave to defendant in error a right of action for such damages as arose out of the unlawful revocation of his agency. Chilton v. Butler, 1 E. D. Smith (N. Y.) 150; Gleason v. McKay, 37 Ill. App., 464; Schuster v. Martin, 45 Ill. App., 481; Blumenthal v. Goodal, 89 Cal., 251; Gottschuck v. Jennings, 1 La. Ann., 5, 45 Am. Dec., 70; Carroll v. Pettit, 67 Hun, 418; Rowan & Co. v. Hull, 2 Am. & Eng. Ann. Cas., 884.

In the last case cited the court draws the distinction between the power and the right to revoke the agency thus: "Nor does it make any difference in this view, that the principal has expressly agreed he will continue to confide in the agent for a definite period. It is no less difficult on that account, to coerce compliance. . . . The law, therefore, leaves the principal in such cases to determine for himself how long the relation shall continue. This, then, is what is meant when it is said that the principal may revoke the authority at any time. But it by no means follows that, though possessing this *power* the principal has a *right* to exercise it without liability regardless of his contract in the matter. It is entirely consistent with the existence of the power that the principal may agree that for a definite period he will not exercise it, and for the violation of such agreement the principal is as much liable as for the breach of any contract."

The facts being such as to give a right of action to the defendant in error, and there being no exemplary damages found by the jury, it follows that the good or bad faith of Hancock in revoking the agency before its expiration and thereby preventing the sale by Stacy is immaterial. It matters not to Stacy what reasons influenced Hancock to change his mind with regard to selling the property, unless such reasons had a foundation in the failure of the agent to perform his duties, or, at least, were based upon some fault on the part of Stacy. There being no exemplary damages involved in the case, the purpose of Hancock, if any existed, to avail himself of the fruits of Stacy's work without compensation therefor could not affect the question of actual damages, therefore, it is unnecessary to discuss or consider that question. However, we deem it proper to say that the strongest phase of the evidence against Hancock does no more than cause a suspicion of a purpose to take advantage of Stacy by withdrawing the authority to sell the property, and while it is true that the explanation which appears in the evidence on the part of Hancock is inconsistent with the existence of such evil purpose, the findings upon that issue in no way influence our decision.

The only remaining question of importance to the decision of this case is the amount of compensation to which Stacy was entitled. The jury found that the services of Stacy in working up the sale was the procuring cause of the sale which was subsequently made by Goldbeck to Scarbrough; that is, in effect, that Stacy had practically sold the property while his agency was in force, and that the sale by Goldbeck was the fruit of Stacy's work. The contract rate of compensation was five percent on the amount of the purchase money. The jury found that the services rendered by Stacy, and of which Hancock got the benefit in the sale, were reasonably worth five percent on the

purchase price of the lots. There was sufficient evidence to support that finding. Therefore, it is unnecessary for this court to decide whether the contract rate or the value of the services rendered should have been applied in ascertaining the damages.

In Chilton & Cole v. Butler, cited above, the court used this language: "This was sufficient to establish an agency, and if the plaintiffs had then followed up the negotiation with the person referred to, or had set on foot a negotiation with another, which resulted in a sale, they would have been entitled to their commissions. And after such negotiation had commenced, and while actually pending, the defendant could not take the matter into his own hands and complete it, either at the price limited or at a less price, and refuse to pay the commissions. If vendors were permitted to employ brokers to look up purchasers, and call the attention of buyers to the property which they desired to sell, limiting them as to terms of sale, and then, while such purchasers were negotiating, take the matter into their own hands, avail themselves of the labor, services and expenses of the broker in bringing the property into market, and accomplish a sale by an abatement in the price, and yet refuse to pay the broker anything, the business of a broker would· not be worth pursuing; gross injustice would be done; every unfair and illiberal vendor would limit his property at a price slightly above the market, and make use of the broker to bring it into notice, and then make his own terms with the buyers, who were in reality procured by the efforts of the agent."

In Pryor v. Jolly, 91 Texas, 86, cited by the plaintiff in error, this court held that, by the terms of the contract between the parties, Jolly had undertaken to furnish a purchaser who would take the cattle and pay cash for them. The facts showed that the proposed purchaser was not able to pay cash for the cattle, and, after considerable effort to secure the money, failed. The agent having failed to furnish a purchaser in accordance with the terms of the contract and his efforts having come to naught without any fault on the part of Pryor, this court held that the fact that Pryor subsequently sold to the same party for the same price, partly on time and part for cash, did not render him liable to the agent. The agency of Jolly terminated when his efforts failed, after he had been afforded reasonable time and had himself abandoned the effort to comply therewith.

Plaintiff in error challenges the sufficiency of the evidence to justify the court in submitting to the jury the issues upon which we have rested this opinion. That is, the finding of the jury that the contract betwen Hancock and Stacy was extended until late in the fall, and that the effort of Stacy to sell was the procuring and efficient cause of the sale. We are of opinion that the evidence was sufficient to submit these issues to the jury and to sustain the finding thereon by the jury.

The plaintiff in error presents many assignments, alleging errors to his detriment, but we are of opinion that if every issue presented to the jury be conceded to the plaintiff in error, excepting those upon which we have based our conclusions, the judgment of this court must be the same, therefore, errors which may have occurred that

could not have influenced the jury in their finding upon the issues which we have discussed are immaterial.

Counsel for plaintiff in error requested the court to charge the jury, in substance, that in order for the conversation between Stacy and Hancock to operate as an extension of the time in which to sell the property, Hancock must have understood that he was giving such extension. We are of opinion that the request was properly refused. If the language used by Hancock and Stacy with the attending circumstances were such as justified Stacy in believing that the extension of time was given, and he acted upon it, Hancock was bound by the legitimate effect of his language and acts rather than by his understanding of their import.

It is ordered that the judgments of the District Court and Court of Civil Appeals be affirmed.

*Affirmed.*