## COX v. COOPER. (No. 12030.)

Court of Civil Appeals of Texas. Fort Worth. Oct. 13, 1928.

Rehearing Denied Nov. 24, 1928.

Ritchie & Ranspot, of Mineral Wells, and S. A. Penix, of Graham, for appellant.

Fred T. Arnold and T. G. Binkley, both of Graham, for appellee.

CONNER, C. J. The appellee, Cooper, instituted this suit against the appellant, Cox, to recover the sum of $620 alleged to be due as commission for effecting the sale of certain stock purchased by appellant. The plaintiff alleged, in substance, that about April 12, 1927, he was employed by the defendant to purchase for him 120 shares of the capital stock in the Graham Independent Telephone Company upon specified terms, defendant at the time agreeing to pay plaintiff a commission of 10 per cent. on the sale price for effecting the sale. Plaintiff further alleged that he negotiated with the owners of said stock and succeeded in obtaining their agreement to sell the stock, but that defendant, upon being notified by the plaintiff of the owners' acceptance of the terms offered, failed and refused to buy, instructing plaintiff to endeavor to secure an option for 90 days, which plaintiff endeavored to do but failed to secure by reason of the owners refusing to give an option. The plaintiff further alleged that later, to wit, about the 15th day of July, the defendant entered into negotiations with the owners of the stock and purchased the same upon substantially the terms originally offered. Plaintiff alleged that he was the procuring cause of the sale made, but that defendant refused to pay commission as he had agreed to do.

The defendant, among other things, pleaded in substance, that his original offer had not been accepted, the owners at that time submitting a counter proposition to the effect that they would sell the stock upon the terms offered on the condition that he, the defendant, pay the costs of a suit between the parties then pending in the district court, which conditional offer was rejected by the defendant, who then sought, but failed to procure,

an option, as alleged by the plaintiff. The defendant further alleged in effect that some time in July of 1927, plaintiff, having failed to effect a sale, he, in good faith, revoked the plaintiff's authority as his agent, refusing to further pursue the matter of the purchase of the stock; that in such revocation of authority the plaintiff agreed and acquiesced, stating that he would have nothing further to do with the matter.

After the introduction of the evidence, the case was submitted to a jury upon a single special issue, to wit: "Was the plaintiff Cooper the procuring cause of the sale of stock in question to W. N. Cox, on or about September 5, 1927? Answer yes or no." The jury answered, "Yes."

Upon the answer so given, the court entered its judgment in favor of plaintiff, Cooper, for the sum of $620, to which judgment the defendant excepted and has duly prosecuted this appeal.

Error has been assigned to the action of the court in overruling appellant's motion to quash the citation on the ground that it was variant from the allegations of the plaintiff's petition. Exceptions below were also taken to certain argument on the part of one of appellee's counsel, and to the introduction of certain conversations had between Mr. Cooper and the owners of the stock; but these assignments will be overruled without particular notice, for the reason that we think the citation sufficiently stated the nature of the plaintiff's petition, that the conversations between Mr. Cooper and the owners of the stock were relevant and admissible on the issue of the owners' consent to the sale of the stock upon the terms offered as testified to by the plaintiff, and that the argument of counsel becomes immaterial in view of our further conclusions.

Appellant, however, assigns error to the action of the court in refusing the following requested charges, to wit:

"(A) Did the defendant, Cox, about June, 1917, tell plaintiff Cooper, in substance, to pursue no further the matter of the purchase of the shares of stock in question? Answer yes or no.

"(B) Did defendant Cox, prior to plaintiff's trip to east Texas in July, 1927, in good faith instruct plaintiff in substance that all negotiations relative to the stock of Mrs. Hamilton and the other owners, were off or ended? Answer yes or no."

The testimony of the plaintiff, Cooper, while not very clear, may be said, for the purpose of our discussion, to support the allegations of his petition. The evidence was that the owners of the stock in question, a Mrs. Hamilton and her children, had instituted a suit in the district court of Young county for the appointment of a receiver and the winding up of the affairs of the telephone corporation; that the plaintiff, Cooper, had been appointed receiver, but was discharged as such within about a month after his appointment; that after his discharge, in April, 1927, he had been employed by the defendant to negotiate with the owners of the stock to obtain their agreement to sell the same to defendant upon the terms offered; that he negotiated with such owners, obtained their consent to sell, and reported the same to defendant, who then refused to buy. As to defendant's refusal, he testified on cross-examination as follows: "It was after I was dismissed as receiver that Mr. Cox and the other parties interested wanted to settle the lawsuit. Yes, sir, the lawsuit was still pending. Yes, sir, the lawsuit remained pending until the last term of this court, that was one of the terms of the sale to dismiss that suit. When I reported to Mr. Cox that some of these parties had agreed to sell at fifty cents on the dollar as he had indicated he would pay, I attached the condition, or told him that they attached the condition, that he and his associates would have to pay the costs of the lawsuit, they wanted the company to pay the lawsuit."

He further testified on cross-examination that he left home on a visit to East Texas about the 10th of July and was gone some 10 or 12 days; that he and Mr. Cox did not call the whole business off, "except on the option"; that Mr. Cox did not tell plaintiff several days before he left, that "he, Mr. Cox, did not want to pursue the matter of a purchase any further and wanted to get an option. * * * I told him I hadn't been able to get any satisfaction out of them, and if they didn't do something by the time I left I wasn't going to have anything more to do with it. * * * It was not mentioned the evening before I left the next morning. No sir, I did not confer with him any more before I left. * * * He told me in the conversation that he wouldn't have the stock at fifteen cents on the dollar, he said he wouldn't have nothing but an option. * * * I told him all the time I couldn't get no option on it. I told him I was tired fooling with the deal. * * * I told him I was through with the option. No sir, I didn't tell him I wasn't going to have another thing to do with it, that some of them didn't have any sense about a proposition. No sir, nothing like that. * * * I think I left on my trip about the fifth or sixth or seventh of July and got back in about ten or twelve days. * * * Yes sir, I did something further about this proposition. When that contract was made I got them to sign it as it was. You (Mr. Ritchie) drew it in September; that was all he did in connection with the deal after my trip in July. Mr. Fred Arnold gave me this contract, he was my attorney in the business. No sir, he wasn't the attorney for Mrs. Hamilton. * * * He was my adviser when he tendered me that contract. * * * Yes, sir, all I did in connection with that deal was to take the contract to Mrs.

Bower and Mrs. Johnson and Mrs. Hamilton to sign. Mr. Arnold turned it over to me because he understood I was the man that was making the deal. I went down to Mrs. Bower's when I procured their signatures, she had charge of the whole thing."

Mrs. Bower testified, among other things, to the effect that she managed her mother's business, and that along in the summer of 1927 Mr. Cooper came to them with the proposition that they, the owners of the stock, take 50 cents on the dollar, $900 cash less $400 theretofore paid to Mrs. Hamilton, the balance to be paid $100 per month with 8 per cent. interest, and that they accepted the offer; that: "This trade was not consummated or closed at that time. Mr. Cooper said he was making that offer for Mr. Cox. * * * Mr. Cooper said Mr. Cox said he wanted an option. Yes sir, I refused to give the option. Yes sir, the negotiations broke off at that point. Yes sir, they were renewed. * * * Mr. Cooper opened up negotiations with me the second time. That was just before time for court in the September term. Mr. Cooper came back to make us an offer again. He made practically the same offer as the other, only 6 per cent. interest that time. Yes, I accepted that offer. Mr. Cooper and his attorney are all that talked to me about this trade."

Mr. Fred T. Arnold testified in substance, among other things: That some time in February, 1927, the Graham Independent Telephone Company had been placed in the hands of a receiver, Mr. Cooper being appointed as such, and that he had been appointed by the court to represent Mr. Cooper. That the only connection he had with it was in representing Mr. Cooper. That the case was tried once and continued once, and a proposition of settlement, with which he had nothing whatever to do, was made. That it fell down for some reason, and that later, in September, 1927, when the trial of the case against the telephone company in the district court was about to come up, Mr. Ritchie came to him, and: "I asked him why it was the thing couldn't be settled along the lines that had already been worked out, and he said that it could. He went off and talked to Mr. Cox and after awhile came back and told me that Mr. Cox would buy this stock, this Hamilton stock and the Johnson stock on the terms and conditions that was set out in the written instrument that was read to you a few minutes ago. I went down and found Mr. Cooper in front of the First National Bank and told him it could be settled on that basis and see what he could do. He went off and came back after awhile and told me that it could be settled on that basis; that the Hamiltons and Bowers and Johnsons accepted it. I went back and told Mr. Ritchie that they would accept this offer and that's all I know about it except it was closed upon that basis."

Cross-examined by Mr. Ritchie, he further testified, among other things, that: "As far as I know I was the first man to mention the matter of settlement to you. I was just extending my good graces to get out of a bad case. My interest in getting rid of a bad case was simply to help a poor widow woman from losing any more money. * * * I asked you why we couldn't settle this, you were waiting to get ready for trial. * * * Mr. Cox was sick at that time. Confined to his bed. Yes sir, after we had discussed the matter at some length in the later afternoon you said I'll go talk the matter over with Mr. Cox and you talk the matter over with Mrs. Hamilton and Mrs. Bower and we will meet back here at one o'clock, and I said all right. I did not talk with Mrs. Hamilton. I didn't intend to deceive you. I don't think Mr. Cooper's name was mentioned in any connection, but I went down and saw Mr. Cooper. The reason I did not go to see Mrs. Hamilton and Mrs. Bower instead of seeing Mr. Cooper was because I had never talked to them, I knew Mr. Cooper was making the deal. * * * Mr. Cooper is the only man I saw about it."

The defendant, Cox, testified in substance, among other things: That about the middle of April, 1927, with a view of getting the lawsuit settled, he had a conversation with Mr. Cooper in which he authorized him to take up with the owners of the stock the matter of its purchase, stating that he would pay 50 cents on the dollar upon suitable terms; that there was nothing said at that time about payment of the costs of the suit; that about the 10th or 12th of June, Mr. Cooper came back and said the owners would accept the proposition, "provided I would pay the costs of this receivership suit. * * * Mr. Cooper's fee in the matter was $250. Mr. Arnold's fee was also $250. The clerks costs and sheriffs costs and ordinary court costs on top of that." "I told Mr. Cooper, I absolutely would not pay the court costs." He further testified:

That a few days thereafter he had a talk with him about not pursuing the matter of the purchase of the stock outright at that time. "I told him I didn't care to purchase the stock and to see if he couldn't get me an option for 90 days; that he agreed to that arrangement; that:

"Later I met him on the street and asked him what progress he was making and he stated that he couldn't get an option, that they wouldn't give one, and that he was going on a vacation in a few days, perhaps four or five days, and that he didn't expect to have anything more to do with it, and he was getting tired of dealing with them, and as far as he was concerned he didn't propose to have anything further to do with it. Yes, sir, I had another conversation with him before he went on his vacation. I wanted to impress it on his mind. I called his atten-

tion to it again, provided he did not trade with these parties by the time he took his vacation that the deal would be ended and the rest of it was all off, that we'd drop the matter. He said nothing about it not being agreeable to him. * * * Mr. Cooper never claimed that I owed him a commission. The first time he made claim on me for a commission was after I had bought the stock. No sir, he did not have any authority after the last conversation with him before he went away to negotiate with these parties for me. He did not negotiate with them in any way that I know of. No sir, not with my knowledge and consent. No sir, he did not have any thing to do with the making of the contract that's been offered in evidence here, the one that was made in September. No sir, I did not know him in the contract in any way. You (Mr. Ritchie) handled that transaction for me. Yes, sir, I was ill at that time and confined to my home. I was in bed. I think you came to my home to confer with me about the matter while Mr. Arnold and you were negotiating, two or three times, twice anyway. * * * Yes sir, I told Mr. Cooper that this negotiation was all off about the time he went off on his vacation in July. Mr. Cooper had told me at that time that these parties would accept my proposition provided I paid the costs of the court. Yes sir, provided that I pay the costs. Yes sir, it was still hanging fire. It was on condition I pay the court costs and I refused it. * * * There was nothing said about a commission when I told Mr. Cooper the trade was all off."

Judge Ritchie testified, among other things, that he was the attorney of the defendant in the suit pending in the district court, and that he came to Graham to see Mr. Arnold about settling the case; that early in the conversation, Mr. Arnold suggested a settlement of the suit by Mr. Cox buying the stock, and said he thought Mrs. Hamilton and the other owners would take 50 cents on the dollar; that he (Mr. Ritchie) went to see Mr. Cox, and it was finally worked out upon the terms specified in the written instrument that he prepared and which was later executed; that he knew nothing whatever of Mr. Cooper during the negotiations and consummation of the sale.

■ We are of the opinion that the court erred in refusing to give the special charges requested. A broker either for the purchase or sale of property occupies a relation to his principal akin to that of an agent, and as a general rule that relation must exist at the very time of the performance of the services on account of which he claims compensation. If authorized to buy or to sell, it must be substantially on the terms of his principal, unless the terms be waived. While it is true that though a broker may fail to procure a purchaser or a seller willing to sell or to buy upon the terms fixed by his principal, if the principal sells to or buys from one interested by the broker during the existence of the broker's employment, he, the broker, is entitled to his commission as contracted for. Goodwin v. Gunter, 109 Tex. 56, 185 S. W. 295, 195 S. W. 848; Keener v. Cleveland (Tex. Com. App.) 250 S. W. 151; 4 R. C. L. title Brokers, § 43, p. 298. But it is also true, under the authorities, that the principal, if done in good faith, may revoke the broker's agency at any time. See 4 R. C. L. title Brokers, § 8, p. 253; Hancock v. Stacy, 103 Tex. 219, 125 S. W. 884. In 4 R. C. L. title Brokers, § 55, p. 317, it is said: "If a broker, after introducing a prospective customer to his employer to no purpose, abandons his employment entirely, or if, procuring a person who proves to be unwilling to accept the terms of his principal, he merely ceases to make further endeavors to negotiate a deal with that particular individual and all negotiations in that direction are completely broken off and terminated, obviously in either case the broker will not be entitled to a commission if his employer subsequently renews negotiations with the same person, either directly or through the medium of another, and thus effect a sale without further effort on the part of the broker first employed."

We think it follows that if in fact appellee in the first instance failed to obtain the consent of the owners of the stock to sell upon the terms offered by appellant, and if appellant thereafter, in good faith, revoked appellee's agency, and appellee acquiesced therein and agreed thereto, and if all appellee did thereafter was to present the contract of sale prepared by Mr. Ritchie to the owners of the stock and gain their consent to the terms therein specified, and if this was all done at the suggestion of Mr. Arnold, without the consent or knowledge of appellant, or of his attorney Ritchie, appellee in such case would be but a volunteer and not entitled to the commission under his original contract with appellant. We know of no authority, should such be the findings, that would entitle appellee to a recovery on the contract he pleaded.

■ It is the rule that if the evidence tends to support a legal defense presented by a defendant, he is entitled to have the issue submitted to the jury for determination. We think the evidence in this case certainly sufficient to call for the submission of the defensive pleas presented by appellant, and that the requested instructions which were refused were at least sufficient to call the court's attention to his duty to submit them.

For the error of the court in refusing appellant's said special instructions, the judgment of the trial court is reversed and the cause remanded for further proceedings not inconsistent with law.

### On Motion for Rehearing.

■ We have been unable to interpret the evidence in this case as does the able counsel

for appellee. As we understand the rule, before an agent is entitled to commissions he must find a purchaser, both able and willing to buy or sell, as the case may be, upon the specific terms offered. We think the evidence undoubtedly raised the issue that the owners of the stock when first approached by appellee, Cooper, declined to sell upon the specific terms offered. They attached the condition that appellant pay the costs of the suit then pending in the district court. This, in effect, was a rejection of the terms offered by plaintiff, and in legal effect was a counter proposition which appellant had the full right to reject, and which the evidence tends to show he did reject, thus ending the effect of both the proposition and counter proposition, the same as if neither had ever been made. Appellant, Cox, further testified to the effect that he did not renew the proposition nor authorize appellee, Cooper, to renew it, but, on the contrary, that he distinctly informed appellee that the entire proposition was abandoned and he would not purchase, and that appellee agreed to this conclusion. It is true that appellee Cooper's testimony was of a contrary effect, but in determining whether or not the court should have submitted to the jury appellant's defense, his testimony and that in his behalf is alone to be considered; it being the function of the jury to determine the conflicts in the evidence. The court failed to submit appellant's defense to the jury, and while we do not wish to be understood as approving the particular form of appellant's requested instructions, we do think they were sufficient to call the court's attention to the duty imposed upon him by the statute to submit proper issues and charges on the issues raised by the pleadings and evidence.

The motion for rehearing will accordingly be overruled.