GLICK *v.* GLICK.

Divorce—Alimony—Lien.

> One who, knowing of a wife's claim for alimony on land held by her husband under a contract of purchase, takes an assignment of the contract from the latter for the purpose of defrauding the wife, will be held to have obtained no interest as against a lien subsequently decreed to the wife to secure the payment of her claim; nor will he be protected to the extent of payments thereafter made upon the contract, where it appears that, at the time of the assignment, other property of the husband was turned over to him equaling in value the payments so made.

Appeal from Ionia; Daboll, J., presiding. Submitted June 17, 1896. Decided July 21, 1896.

Bill by Mary L. Glick against Albert and Jacob Glick to foreclose a lien for alimony. From a decree for complainant, defendant Jacob Glick appeals. Affirmed.

*Charles L. Wilson*, for complainant.

*Fred H. Stowe* and *John Nichol*, for appellant.

Long, C. J. This bill was filed April 11, 1894, to foreclose a lien decreed in divorce proceedings between complainant and defendant Albert Glick. The lien was declared December 30, 1893, principally to secure payment of alimony for the maintenance of an infant child of the parties, about four years of age. The decree required Albert to pay to complainant the sum of $20 every three months, for the support, care, and education of the child, until it arrived at the age of 12 years, giving its custody to the complainant. The lien covers 60 acres of land held by said Albert under land contract from Sanford A. Yeomans, dated July 27, 1891, duly

recorded; the purchase price being $600, upon which there was paid down $75, and interest to September 1, 1891. The residue was made payable $50 September 1, 1893, and $50 each year thereafter until fully paid, with interest at 7 per cent. annually. The divorce suit was commenced November 7, 1892, and personal service of process was made. *Lis pendens* was filed in the suit September 18, 1893, giving notice of complainant's claim for alimony, and her interest in the premises. Injunction was also issued the same day, and served the next on Jacob Glick. It was directed to said Albert, and to said Jacob as agent and trustee of said Albert, their solicitors, etc., restraining them from assigning or otherwise transferring said land contract, or from selling or conveying said land, etc., and therein reciting the complainant's claim for alimony and interest in said land.

The bill of foreclosure, aside from ordinary allegations, sets forth that the defendants were conspiring and combining together to injure complainant, and prevent her from recovering said alimony, by said Jacob's entering into possession of said Albert's personal property, and by cutting down and converting the growing timber, thereby lessening the value of the premises, alleged to be a scanty security. The bill also alleges that Albert had so far performed on his part of said contract, and had paid $125 of principal, besides interest then due, and prays that, in case complainant should pay any portion of said purchase price to protect her interest, the same may be included in her decree. It also prays for subpœna, and injunction to stay waste, and for general relief. Appearance in this suit was duly entered for both defendants by same counsel. They answered only for Jacob, and allowed the bill to be taken as confessed as to Albert.

The answer of Jacob, filed August 7, 1894, admits the decree of divorce and for alimony, and the lien on the premises, as alleged, but denies that Albert then owned the premises, or had any right therein, and avers

that Jacob was at that time in possession, under assignment in writing of all of Albert's interest therein; denies fraud on his part; denies that Albert paid $125, and interest, on said contract; alleges that Albert had declared his intention to abandon the contract and allow it to become forfeited, and that, upon his remonstrance, Albert offered voluntarily to convey to him his interest in the land, without charge, if he wanted it; that subsequently, relying upon such offer, and believing Albert's interests worth protecting, he accepted the same, and made the payment of principal and interest due September 1, 1893. He avers that after making the payment, and on October 9, 1893, Albert did assign to him, in writing, his interest; that he paid the taxes of 1893; that on July 12, 1894, before answering the bill, he prepared a quitclaim deed of the land, and an assignment of the contract, and tendered the same to complainant, conditioned upon her refunding to him the moneys so paid on said contract, and for taxes, and interest thereon, amounting to $94.53; that she refused the tender so made. He also avers his willingness to account for personal property received from Albert, and to yield his interest upon payment of amount mentioned, and denies conspiracy, waste, etc., and alleges that he has made valuable improvements, clearing off and putting into crops 10 acres, and that the premises were worth $50 or $100 more than when received. He makes general denial, and prays to be dismissed with costs, etc.

Replication was duly filed, and the proofs were taken in open court January 29, 1895. The decree of the court computes the amount matured and due complainant on decree to date of entry, July 11, 1895, at $256.36; orders sale after September 15, 1895; adjudges premises a scanty security, and restrains defendants from committing waste; adjudges Albert personally liable, and, in case of deficiency, that Jacob shall be held personally liable for a sum equal to the extra taxable costs occasioned by his

defense, and that he has no equity except in case of surplus after full satisfaction of complainant's lien, etc.

The record shows that, after the service of subpœna in the divorce case, defendant Jacob knew of the claim made by complainant for alimony, and her claimed interest in the property to pay the same. Before the bill was filed to enforce the lien, Albert absconded. Jacob claims to have arranged with him for the purchase of the land, and an assignment of his interest, but the assignment of the contract was not then made. The papers were thereafter prepared, sent forward to Albert, and then by him executed. When Albert left he turned all his property over to his father, Jacob Glick. There were a team and wagon, and other personal property. The court below evidently believed, from all the facts and circumstances disclosed by the record, that Jacob and Albert were acting in concert to defraud the complainant, and that for this purpose whatever property Albert had was put into Jacob's hands, and that there was sufficient to pay Jacob for what he had put into the land. The court, therefore, by its decree, sought to protect the rights of the complainant; and, we think, properly. That decree will be affirmed, with costs.

MONTGOMERY, HOOKER, and MOORE, JJ., concurred. GRANT, J., did not sit.