### WEBB et al. v. HARDING et al.

(Court of Civil Appeals of Texas. Ft. Worth. June 14, 1913. Rehearing Denied Oct. 18, 1913.)

1. APPEAL AND ERROR (§ 1002*)—VERDICT—CONCLUSIVENESS.

Where, in a broker's action for commissions, the court charged, the evidence being conflicting on that point, that unless the jury found that the broker was the procuring cause of the sale they should return a verdict for defendants, a verdict for the broker was a finding that he was the procuring cause, which is conclusive on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3935–3937; Dec. Dig. § 1002.*]

2. BROKERS (§ 57*)—COMPENSATION — SUFFICIENCY OF SERVICES.

Where a real estate brokerage firm,. with whom land was listed, were the efficient, procuring cause of a sale by the vendor, they were entitled to their commissions for the land listed, though the vendor, in order to make the sale, was compelled to purchase and include other land.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 66, 67, 72; Dec. Dig. § 57.*]

3. TRIAL (§ 252*)—INSTRUCTIONS — CONFORMITY TO EVIDENCE—ACTIONS BY BROKER FOR COMPENSATION.

Though a vendor, who had listed land with a broker, could sell the land himself and thus revoke the broker's authority, the mere fact of a sale by the vendor to a purchaser interested by the broker did not raise the issue of revocation; hence it was not error to refuse defendant's request presenting such issue.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

4. TRIAL (§ 260*)—REQUESTS — INSTRUCTIONS ALREADY GIVEN—ACTIONS BY BROKER FOR COMPENSATION.

Where, in an action by a real estate broker for commissions on a sale consummated by the vendor, the court charged that the verdict should be for vendor unless the sale was upon the very terms authorized, or unless the terms were changed to deprive plaintiffs of their commissions, it was not error to refuse defendant's request presenting the issue of the owner's right to sell.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

5. BROKERS (§ 56*) — COMPENSATION — SUFFICIENCY OF SERVICES.

If a broker was the procuring cause of a sale of land, his absence at its consummation by the vendor was immaterial.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 85–89; Dec. Dig. § 56.*]

6. TRIAL (§ 252*)—INSTRUCTIONS — EVIDENCE—ACTIONS BY BROKER FOR COMPENSATION.

Where, in an action by a real estate broker for commissions on a sale consummated by the vendor, there were circumstances tending to show that the terms were changed to defeat the broker of commissions, it was not error to submit such issue to the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

7. APPEAL AND ERROR (§ 882*)—PARTIES ENTITLED TO ALLEGED ERROR—INVITED ERROR.

Besides, defendants cannot complain, since it was invited by requesting charges containing the same issue.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3591–3610; Dec. Dig. § 882.*]

8. BROKERS (§ 57*)—COMPENSATION — SUFFICIENCY OF SERVICES.

Where a vendor consummated a sale with a purchaser procured by a broker, with whom the land was listed, and voluntarily reduced the price to effect the sale, the broker was entitled to his commissions regardless of the issue of good or bad faith in the reduction of the price.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 66, 67, 72; Dec. Dig. § 57.*]

9. TRIAL (§ 252*) — INSTRUCTIONS — APPLICABILITY—ACTIONS BY BROKER FOR COMPENSATION.

Where a broker was employed by one joint owner of land, a charge, in an action by the broker for commissions, that if the other owners had notice, before they consummated the sale, of the broker's rights, they would be equally liable, was not error, since the evidence warranted the inference that, if without actual notice, they had knowledge of circumstances which effected them therewith.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

10. APPEAL AND ERROR (§ 1064*)—REVIEW—HARMLESS ERROR.

Besides, the evidence tended to show that they authorized their co-owner to sell, thus giv-

---

ing him implied authority to employ the usual agencies for that purpose.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221–4224; Dec. Dig. § 1064.*]

11. BROKERS (§ 85*)—ACTIONS FOR COMPENSATION—ADMISSIBILITY OF EVIDENCE.

In a broker's action for commissions, a telegram sent by the broker to a joint owner who had listed the land asserting the broker's claims for commissions was properly admitted upon the issue of knowledge of the other joint owners of the broker's claims; there being further evidence that all the owners knew of the telegram.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 106–115; Dec. Dig. § 85.*]

Dunklin, J., dissenting.

Appeal from District Court, Taylor County; Thomas L. Blanton, Judge.

Action by H. C. Harding and others against Sidney Webb and others. Judgment for plaintiffs. Defendants appeal. Affirmed.

R. A. John, of Houston, R. E. Taylor, of Henrietta, and J. M. Wagstaff, of Abilene, for appellants. Cooper, Merrill & Lumpkin and R. R. Hazlewood, all of Amarillo, and Sayles, Sayles & Sayles, of Abilene, for appellees.

CONNER, C. J. This is an appeal from a judgment in appellees' favor in a suit for five per cent. commissions on the sale of approximately 90,000 acres of land owned by appellants to one R. B. Masterson, of which sale appellees alleged they were the efficient cause.

[1] As we find the case, the controlling issue is whether appellees were the procuring—the efficient—cause of the sale. It is in effect conceded that the evidence on this issue is conflicting. Appellants thus state it on page 3 of their brief herein: "The issues in this suit as to whether or not the plaintiffs were the procuring cause of the sale to Masterson were sharply contested. The plaintiff Harding testified to facts indicating that they were the procuring cause of the sale, and defendant Webb and others testified to facts showing plaintiffs were not the procuring cause of the sale." And the court, after having instructed the jury in the general charge that to entitle the plaintiffs to recover it must appear that they were the procuring cause of the sale, and that "unless you should find that the efforts of the plaintiffs, or either of them, were the procuring cause of said sale, you will find a verdict against the plaintiffs," also specially charged at appellants' request as follows: "Gentlemen of the jury, in this case you are charged that by the term 'procuring cause' as used in the general charge is meant that, before plaintiffs can recover, you must find by a preponderance of the evidence that the acts and negotiations, if any, of plaintiffs with R. B.

Masterson, induced the sale of the land by the defendants and but for the acts and negotiations of plaintiffs with Masterson the trade would not have been made." After having been thus clearly and pointedly submitted to the jury, the verdict in appellees' favor settled the conflict, and under well-settled rules we must now accept as an established fact that, whatever else occurred, appellees were the efficient cause of the sale in question.

[2] This being true, the mere fact that Masterson refused to purchase at any price unless appellants would secure and include in the sale, as they did, about 1,200 acres of land situated in the pasture and owned by one McDowell and which appellees had no authority to sell, would not defeat appellees' right to recover their commissions on the sale of appellants' land that they did represent. It is sufficient that Masterson was a purchaser procured by appellees and that he finally purchased upon terms satisfactory to appellants, variant though such terms may have been from those originally given, and even though appellants themselves consummated the sale. See Hancock v. Stacy (Sup.) 125 S. W. 884; Ranson v. Weston, 110 Mich. 240, 68 N. W. 153; French v. McKay, 181 Mass. 485, 63 N. E. 1068; Blair v. Slosson, 27 Tex. Civ. App. 403, 66 S. W. 112, and authorities there cited; Ullmann v. Land, 37 Tex. Civ. App. 422, 84 S. W. 294; Hamburger v. Thomas, 118 S. W. 770; Loomis v. Broaddus, 134 S. W. 746; Pierce v. Nichols, 50 Tex. Civ. App. 443, 110 S. W. 208; Parks v. Sullivan, 152 S. W. 704; Newton v. Conness, 106 S. W. 892.

In Ranson v. Weston, by the Supreme Court of Michigan, cited above, the precise point was made, and it was held that a vendor cannot escape liability for commissions to the agent employed to negotiate a sale of the land on completing himself the sale to a purchaser with whom the agent had been negotiating, by including in the sale other lands in addition to those the agent was employed to sell. This is but an application of a very general rule on the subject which has frequently been approved by our own courts. Thus in Hancock v. Stacy, above, our Supreme Court quoted with approval from a New York decision the following: "If vendors were permitted to employ brokers to look up purchasers, and call the attention of buyers to the property which they desired to sell, limiting them as to terms of sale, and then, while such purchasers were negotiating, take the matter into their own hands, avail themselves of the labor, services, and expenses of the broker in bringing the property into the market, and accomplish a sale by an abatement in the price, and yet refuse to pay the broker anything, the business of a broker would not be worth pursuing; gross

injustice would be done; every unfair and illiberal vendor would limit his property at a price slightly above the market, and make use of the broker to bring it into notice, and then make his own terms with the buyers, who were in reality procured by the efforts of the agent." The other cases by courts of Texas above cited are in harmony with the quotation made and in no wise conflict, as we think, with the cases of Winters v. Portwood, 49 Tex. Civ. App. 297, 109 S. W. 388, and Gough v. Coffin, 55 Tex. Civ. App. 550, 120 S. W. 210, cited by appellants. In the case of Winters v. Portwood the real estate agent interested a proposed purchaser, but he was not only unwilling to purchase on the terms upon which the land had been listed, but no other terms were agreed to by the owner and no sale was ever in fact made. Gough v. Coffin is merely to the effect that an agent who secures a contract for the purchase upon terms not authorized is not entitled to recover commissions as for a sale. We, accordingly, hold that no error was committed, as urged in the first and principal assignment, in refusing to instruct the jury to find for appellants if Masterson would not have purchased without the inclusion of the McDowell lands.

[3, 4] While appellants as owners had the undisputed right to sell the land in controversy to a purchaser of their own procurement, the mere fact (and there is no other) that they made the sale in question to Masterson, a purchaser undoubtedly in the first instance interested by appellees, did not raise the issue of a revocation of appellees' authority, and the court very clearly instructed the jury to the effect that the verdict should be for appellants unless it was found that the sale was upon the very terms originally authorized, or, if upon other terms, that the change in the terms of sale was for the purpose on appellants' part of depriving appellees of their commissions, thus in effect assuming that, if Masterson was unwilling to buy on terms that appellees were authorized to present, appellants as owners would have the right in good faith to sell upon the changed terms. We therefore overrule the second and third assignments complaining of the refusal of special charges presenting the issues of the owners' right to sell and of a revocation of appellees' agency before the sale.

[5] Nor do we think there was material error, if any at all, as urged in the fourth assignment, in instructing the jury that if appellees were the procuring cause of the sale their absence at the time of its consummation was immaterial.

In the fifth assignment complaint is made of the following instruction given by the court: "If you believe that defendant Webb listed the land described in plaintiffs' petition with plaintiffs, or either of them, for sale, and that defendant Webb reserved the right to himself and defendants Brooks and Jones, or either of them, to sell such land, and if you further believe that plaintiffs, or either of them, and defendant Webb agreed that the defendants, or either of them, would not employ other agents to sell said land, and if you further believe that the efforts, if any, of plaintiffs, or either of them, were the procuring cause of the sale of said land to said Masterson, and if you further believe that defendants Brooks and Jones knew of such agreement, if any, between said Webb and plaintiffs prior to the closing of the sale of said land to said Masterson, you will render your verdict for plaintiffs, although you may believe that the defendants or either of them, or any other agent or agents or other person, also exerted efforts in closing such sale to said Masterson."

The objections to the charge quoted are, in substance, that it ignores appellants' right to in good faith sell upon terms different from those given the agents, and that upon the facts recited in the charge appellees could only recover for their services upon a quantum meruit of which there is no proof. In the light of the entire record, it seems manifest that the charge was merely designed to place in its proper light certain evidence of efforts of one or more of appellants and of certain other persons relied upon as refuting appellees' claim that they were the procuring cause of the sale; especially does this seem true in view of special charge No. 20 given at appellants' request presenting the converse of the proposition as follows: "Gentlemen of the jury, in this case you are charged that if you find and believe from the evidence in this case that E. A. Paffrath, J. H. Avery or Al Boyce, and Lynn Boyce, or either of them, found R. B. Masterson as a purchaser of the land in question and placed the same before him, and that said Masterson bought said land by reason of the efforts of said parties, or either of them, and the representations made by them, you will find for the defendants." So that the objection that the charge ignores appellants' defense does not seem very material. Appellants' only defense was comprehended in their general denial, which was fully met in the court's general charge. Indeed, as before stated, the general charge, in effect, assumes in appellants' favor that, if the sale was upon changed terms and in good faith, appellants would have the right to so sell to the exclusion of appellees, for thereunder the jury were not authorized to find for appellees at all unless the change in terms, if any, had been made for the purpose of depriving appellees of their commissions. Appellees alleged, and one of them specifically testified, to the effect that by the terms of the contract of their employment they were to receive 5 per cent. commissions upon the sale of the land upon any terms agreed to by appellants. But if, as appellants insist, appellees were not authorized to sell at a price less than $4 per acre, and if appellants

changed the terms for the purpose of depriving appellees of their commissions, as is to be implied from the verdict of the jury, there can be nothing in the second objection to the charge under discussion. In such case, as well as upon the other theory of the case alleged, appellees' right of recovery was upon the express contract shown by their evidence and not upon a quantum meruit. See Ullmann v. Land, 37 Tex. Civ. App. 422, 84 S. W. 294, cited above. We, accordingly, overrule appellants' fifth and eleventh assignments of error.

[6, 7] In several assignments, particularly in the sixth and seventh, the charge is objected to on the ground that the evidence did not authorize a submission of the issue of whether appellants changed the terms of sale in order to defeat appellees' claim for commissions. While the allegations of fraud in this respect seems not to be supported by any direct evidence, there are circumstances tending to show an effort to exclude appellees from final participation in and benefit from the sale, and we are not prepared to say that the court improperly left it to the jury to find whether appellants' reduction in price from $4 per acre, which they insist was the limit of appellees' authority, to $3.75 per acre, the price at which the land was sold, was intended as one of the means to accomplish the indicated exclusion. Moreover, the charge as submitted seems favorable to appellants and more onerous on appellees than perhaps required. It is not disputed that appellees were engaged by appellant Webb to find a purchaser. The controversy is in respect to the terms; appellants insisting, as before stated, that the authority was limited to a sale at $4 per acre, and appellees alleging and testifying that they were to receive 5 per cent. commissions at whatever price was finally agreed upon. If appellees' contention be true and they were the procuring cause of the sale, they were undoubtedly entitled to recover. Or if the contract was as urged by appellants and they afterwards knowingly dealt with the purchaser procured by appellees, voluntarily reducing the price to effect the sale, and appellees were the procuring cause of the sale, they would be entitled to recover the agreed commissions regardless of the issue of good or bad faith in the reduction of price, as is abundantly established by the authorities hereinbefore cited by us.

[8] At all events, however, appellants are in no attitude to complain of the submission of the issue of whether the price was reduced for the purpose of defrauding appellees of their commissions, inasmuch as their submission of this issue was plainly invited by more than one of appellants' special charges which they requested the court to give.

[9] The facts show that the engagement of appellees was by appellant Webb, a joint owner of the lands with appellants Brooks and Jones, and the court's charge is further objected to in that the jury were thereby instructed that, if appellees were the procuring cause of the sale and Jones and Brooks had notice of their asserted right of commissions before the sale was closed and thereafter knowingly consummated it, then Jones and Brooks would be equally liable with Webb. We find no reversible error in this respect. The evidence clearly warranted the inference that, if without actual notice, Brooks and Jones had knowledge of circumstances that effected them therewith.

[10] Moreover, the evidence as we find it strongly tends to further show that Jones and Brooks conferred upon Webb full authority to make a sale, thus giving him implied authority to employ the usual agencies to accomplish the purpose.

[11] One E. A. Paffrath was shown to have a contingent interest in the land and to have visited Amarillo at the instance of appellant Brooks in order to try and effect a sale to Masterson through other land agents—the Boyces—and we, hence, think that the acts and declarations of Paffrath and the Boyces on the occasion of the visit relevant to the issue of fraud. Appellees alleged and testified that their employment was exclusive of all other agents and the acts and declarations objected to tended to show a knowledge of appellees' relation to the purchaser, Masterson, and a design to exclude them from all benefits of a sale, thus affording an inference that the subsequent reduction in price was one of the means adopted to deprive appellees of a right to commissions. So, too, we think the telegram of appellees to Webb, just before the conclusion of the sale asserting their claim for commissions if the sale was made to Masterson, was relevant to the issue of knowledge on the part of Jones and Brooks; there being further evidence tending to show that the contents of the telegram was brought home to all of the appellants.

What has already been said we think will suffice for a disposition of all assignments of error, except, perhaps, those attacking the verdict and judgment for want of support in the evidence, and these we think must be overruled. Without reciting it further than as already stated, the evidence as a whole, which has been carefully examined, in our opinion establishes the material allegations of appellees' petition as against all appellants and that nothing presented in the record before us amounts to such a denial of the rights of appellants as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment in the case. See rule 62a (149 S. W. x).

All assignments are, accordingly, overruled, and the judgment is affirmed.

DUNKLIN, J. (dissenting). There is neither pleading nor proof that but for the reduction of price from $4 per acre to $3.75 per acre appellees could and would have procured a purchaser ready, willing, and able

to purchase the property for $4 per acre. Neither was there pleading nor proof to support a recovery upon the theory of quantum meruit. The suit was upon an express contract that appellants would pay a commission of 5 per cent. upon any price realized for the property. Under this state of the record, the writer is of the opinion that if appellants' contract was that they should pay to appellees a 5 per cent. commission in the event only that appellees should find a purchaser at $4 per acre, and that appellees were not employed to sell at a lower price than that as contended by appellants and as testified by some of the witnesses, then appellees could not recover even though their efforts were the efficient cause of the sale at $3.75, and even though the motive which inspired appellants to reduce the price to that sum *was to defeat appellees in the collection of a commission.* It seems to the writer that to hold otherwise would be to adopt a rule for suits by brokers on contracts for commissions contrary to the rule governing in suits upon contracts for services of a different character, and he is unable to perceive any reason for such a distinction. Hence he is of the opinion that the special instruction given by the court made the basis of the fifth assignment and copied in the opinion of the majority was erroneous in that it warranted a recovery even though the contract between the parties was as contended by appellants and noted above, and that for this error the judgment should be reversed and the cause remanded.

Notwithstanding the fact that the issue of bad faith on the part of appellants in reducing the price of the property to $3.75 per acre after it was listed at $4 per acre was treated by appellants, as well as by appellees, as an issue material to appellees' recovery, and no assignments are urged to the submission of that issue in the court's charge, the writer is of the opinion that it should not have been submitted to the jury, as it tended to obscure the controlling issues. If appellants contracted to pay appellees 5 per cent. commission on the price realized for the land regardless of the price for which it should be sold, as pleaded by appellees, and if the efforts of appellees were the efficient cause of the sale, then they were entitled to recover independent of appellants' motive for reducing the price. And if the contract alleged in appellees' petition and upon which their suit was founded was not established by proof, then they could not recover, even though appellants reduced the price for the fraudulent purpose alleged by appellees, and even though appellees' services were the efficient cause of the sale. This suggestion is offered in the belief that, if sound, it will prove helpful to a better understanding of the principles of law governing in cases like this.