## PARKEY v. LAWRENCE.   (No. 11506.)

(Court of Civil Appeals of Texas. Fort Worth. April 3, 1926. Rehearing Denied May 15, 1926.)

1. **Brokers** ⊚⟶8(1), 84(1)—**Broker, to recover commissions, must show employment and that his services were efficient and procuring cause of sale later made by owner.**

Broker, to be entitled to commission for negotiating sale of property, has burden of showing employment by owner and rendering of services thereunder which were the efficient and procuring cause of sale later made by owner.

2. **Appeal and error** ⊚⟶1012(2)—**Judgment will be affirmed on appeal if more than scintilla of proof supports verdict or finding, unless contrary to overwhelming preponderance of evidence.**

Judgment will be affirmed on appeal, if there is more than scintilla of proof supporting verdict of jury or finding of court on issue of fact, unless it is contrary to overwhelming preponderance of evidence requiring appellate court to remand case for new trial.

3. **Appeal and error** ⊚⟶989—**Only evidence favorable to judgment will be considered in determining its sufficiency to support findings of fact, and, if such evidence supports judgment, it cannot be attacked because not supported by sufficient evidence.**

In determining sufficiency of evidence 'to support findings of fact, evidence favorable to judgment must be considered to exclusion of evidence contrary thereto, and, if such evidence supports judgment, judgment cannot be attacked for insufficiency of evidence to support it.

4. **Brokers** ⊚⟶86(1)—**Evidence held not to sustain judgment allowing recovery of broker's commissions, in view of abandonment of negotiations by broker, and subsequent sale by owner.**

Evidence that broker abandoned efforts to negotiate sale, which was subsequently made exclusively by owner, *held* insufficient to sustain judgment for broker in suit for commissions.

5. **Brokers** ⊚⟶88(3).

Whether broker's services were procuring cause of sale is issue of fact for court or jury.

6. **Brokers** ⊚⟶7.

Contract of broker with his principal for sale of land is governed by laws applicable to ordinary contracts.

7. **Brokers** ⊚⟶45—**Broker's contract, when not one of exclusive agency, ends on voluntary abandonment of effort to find purchaser or failure to do so within reasonable time, without fault of owner, and thereafter owner may sell to purchaser first found by broker.**

Broker's contract of employment, when not one of exclusive agency, ends on voluntary abandonment of efforts to find purchaser or failure to find one within reasonable time, without fault of owner, and thereafter owner may sell property to purchaser first found by broker, either directly to purchaser or through another broker.

8. **Brokers** ⊚⟶86(1)—**Evidence held to show abandonment by broker of contract to find purchaser, and subsequent sale by owner through own efforts to purchaser originally found by broker, precluding broker from recovery of commissions.**

Evidence *held* to show abandonment by broker of contract to find purchaser for property, and subsequent sale by owner through own efforts to purchaser originally found by broker, precluding broker from recovery of commissions.

Buck, J., dissenting.

Appeal from District Court, Archer County; H. R. Wilson, Judge.

Action by W. E. Lawrence against J. R. Parkey. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

E. C. DeMontel and W. H. Sanford, both of Wichita Falls, and W. E. Forgy, of Archer City, for appellant.

J. C. Smith, of Forth Worth, and John R. Moore, of Archer City, for appellee.

DUNKLIN, J. J. R. Parkey has appealed from a judgment rendered against him in favor of W. E. Lawrence, in a suit by the latter as plaintiff, to recover commissions which he alleged he had earned by finding a purchaser for an oil and gas lease on 12,000 acres of land owned by the defendant, pursuant to an employment of plaintiff by the defendant to negotiate such a sale.

The case was tried before the court without a jury, and the principal assignment of error presented here is the alleged insufficiency of the evidence to support the recovery awarded.

The evidence was sufficient to support the finding that the defendant employed the plaintiff to find a purchaser for an oil and gas lease upon the land in controversy; that his employment was on or about January 5, 1923, and occurred in Wichita Falls where the defendant lived. Plaintiff testified that immediately after that employment he visited the office of the Empire Gas & Fuel Company in Wichita Falls and there solicited Mr. Fenoglio, the representative of that company, to purchase the lease, and was informed by him that he would be interested in it provided there was any geological formation on the land, and that he would go and see it. Plaintiff further testified that he reported to the defendant what Mr. Fenoglio said, and then returned to Fort Worth, where he resided; that about January 22, or 23, plaintiff again interviewed Mr. Fenoglio over the telephone, and was then told that the latter had not inspected the property but would do so as soon as possible; that that conversation was reported to the defendant a day or two later. Plaintiff further testified as follows:

---

"I saw, Mr. Fenoglio and Mr. Parkey both at various times during the next several months, in fact all during the summer of 1923, and Mr. Parkey never did tell me—in fact he urged me not only to close the Empire deal, but to get busy. He didn't want to fool with small people but wanted to sell it in large tracts, not only that acreage, but his acreage near Mankins. He told me on numerous occasions to work on his land in Archer county. He said he had enough land there to make us both all we needed and he would take care of me if I would sell his leases."

Plaintiff introduced the defendant as a witness, who testified in part that his proposition to sell the lease in controversy was first discussed with the plaintiff in the Kemp Hotel in Wichita Falls; that immediately after that conversation plaintiff left the hotel, saying that he would present the proposition to the Empire Gas & Fuel Company, who had an office in Wichita Falls, and soon thereafter returned to the hotel and reported to the defendant that Mr. Fenoglio, the lease manager of that company, had stated to him that he would not be interested in the proposed lease, and that later, after plaintiff returned to Wichita Falls from Fort Worth, he again told the defendant that the Empire Gas & Fuel Company was not interested in the lease. The witness further testified that about the time of the last conversation with the plaintiff the witness went to the office of the Empire Gas & Fuel Company and tried to interest Mr. Fenoglio in the proposition of taking a lease on the property and was then told by Mr. Fenoglio that his company was not interested and would not give the witness $1 an acre for the lease. The witness further testified that his visit to Mr. Fenoglio occurred in May or June, 1923, and that he did not see him any more until about the 3d day of December, 1923, at which time he closed a trade with the Empire Gas & Fuel Company, by the terms of which he leased to that company the 4,000 acres of land in controversy for a consideration of $30,000 in cash and other considerations stipulated, and at the same time the defendant executed a contract giving to the company an option to lease other land contiguous thereto, upon certain conditions and considerations mentioned in the agreement.

The defendant further testified that he had heard of the Empire Gas & Fuel Company before the plaintiff had mentioned that company, and that, although plaintiff was the first man who suggested that a lease might be made to that company, the same suggestion was made by several others who had tried to negotiate a deal. Defendant further testified that, after plaintiff reported the second time that the Empire Gas & Fuel Company was not interested in the lease, defendant saw him no more until after the witness had leased the property to that company, and that the lease made by him was on better terms than the price he had named to the plaintiff. Defendant further testified as follows:

"After I made this trade, I had a conversation with Mr. Lawrence about the commission. I believe the way it started off he said, 'You ought to give me something out of that; I said lots of good things about your land out there, and you ought to give me a lease on 40 acres of land.' I said, 'I didn't know you had anything to do with it;' and another time he asked me for $1,000 and said he was about to lose his home in Fort Worth, and I was making some easy money."

B. P. Fenoglio, manager of the lease department of the Empire Gas & Fuel Company, was introduced as a witness by the defendant, and testified that, when the plaintiff first presented the proposition of a lease on defendant's land, witness made a memorandum of the tract of land, showing the name of the defendant as owner, W. E. Lawrence as broker, and the price at $12.50 an acre, and the drilling of one well. He further testified as follows:

"At the time Mr. Lawrence spoke to me about that I told him we were not interested unless there was sufficient geology there; that we didn't know anything about it, and, if there was anything on it in the way of surface indications or structure, we might be interested. The first time I ever saw Mr. Parkey was after Mr. Lawrence had been in the office. I would say I saw him about the middle of May. He put the proposition up to me, and I told him I wouldn't give him $1 an acre for it; that we didn't want it. * * * We worked out a surface structure on that after we closed the deal with Mr. Parkey. We closed that deal with Mr. Parkey some time about the 5th of December, 1923, when Mr. Lawrence put this matter up to me.

"Mr. Lawrence came back to see me one or two times about this Parkey land. The first time he came back was a week or two later, and at that time he merely asked me if we had had time to look it over. He said, 'Have you been able to get over the Parkey ranch?' and I told him we had not, and the second conversation I told him we were not interested for the reason we had our geologist on a ranch near there and were not interested in it. I am not positive of the date of that last conversation, but it must have been a month or six weeks after he submitted it, in January or the first part of February. This sale was made in December. Mr. Lawrence came back to me again about that Parkey lease. I saw him two or three weeks after we closed the deal with Mr. Parkey. I saw him down at Fort Worth at the entrance of the F. & M. bank building, and he says, 'I see you worked out a deal with Mr. Parkey;' and I said, 'Yes;' and he says, 'You remember I put up that ranch;' and I said, 'Yes; I do remember you did put that up one time;' and he says, 'You closed that on the same proposition I submitted;' and I said, 'No; I don't believe I did;' I says, 'It seems like your proposition was a drilling contract;' and he says, 'I wonder if I can get a commission from Mr. Parkey;' and I says, 'Evidently you are not

entitled to one, so far as I can see, but if Mr. Parkey wants to give you one it is all right.'

"The first time I ever saw Mr. Parkey was after Mr. Lawrence had been in my office. I would say I saw him about the middle of May. He put the proposition up to me, and I told him I wouldn't give him $1 an acre for it; that we didn't want it. The next time I saw Mr. Parkey was about the 25th of October or the 1st of November, 1923. At that time I talked with him about leasing his land. That was the time I talked to him about this diamond core drilling. We were going to try out a diamond core drilling in this district, and I had received a letter from the office wanting to know where we could place this test, and they suggested the Burnett ranch at that time, and if we couldn't get that to see what other large ranch we could get—that is, acreage in a large body—that we could test, and that is what caused me to get in touch with Mr. Parkey. I have that letter from my company requesting me to get this acreage for a diamond core test.

"After Mr. Lawrence was in my office in February, and Mr. Parkey was in there some three or four months afterwards, I did not talk to either one of them about the lease or land until after I got this letter. It was after I got this letter that I approached Mr. Parkey with reference to securing a contract to do some diamond core drilling, with an option on the land in the event the diamond core proved successful."

[1] The rule applicable in cases like this is to the effect that, in order to entitle a broker to recover a commission for negotiating a sale of property, the burden is upon him to show that he was employed by the owner to negotiate the same as such broker, and that he rendered services under that employment, which was the efficient and procuring cause of the sale later made by the owner. It is unnecessary to cite authorities upon a proposition so well known as this.

[2] It is also a familiar rule that, if upon appeal there be any evidence shown amounting to more than a scintilla of proof, to support the verdict of the jury or the finding of the court upon an issue of fact, the judgment will be affirmed, unless the judgment is contrary to such an overwhelming preponderance of the evidence that the appellate court would feel impelled to set it aside and remand the cause for a new trial.

[3] In determining the question of the sufficiency of the evidence to support a finding of fact by the jury or judge on the controlling issues, the evidence offered favorable to the judgment must be considered to the exclusion of other evidence contrary thereto, and, if the same, when reasonably construed, tends to support the judgment, an attack upon the judgment for insufficiency of evidence to support it, must be overruled.

[4] The testimony set out above of appellee and of the witness Fenoglio is the proof chiefly relied on by the appellee to sustain the recovery, and, after a careful consideration of the same, we have reached the conclusion that it was insufficient to sustain the judgment. There was further testimony sufficient to show that appellee was the first person who brought the proposition to Mr. Fenoglio, and that appellee several times during the spring and summer repeated his efforts to induce Mr. Fenoglio to take the lease. But according to appellee's own testimony those efforts made by him proved wholly futile. His testimony further shows that he made no further effort to negotiate the sale after the summer of 1923; and the uncontradicted testimony of Mr. Fenoglio, who took over the lease finally on December 3, 1923, shows conclusively that that transaction resulted by reason of a letter from the head office of his company requesting him to look out for a tract of land suitable for core drilling. The uncontroverted testimony of Fenoglio and appellant was to the effect that, after receipt of that letter, Fenoglio entered into negotiations with appellant exclusively, which resulted in the sale of the lease in question.

In Keener v. Cleveland, 250 S. W. 151, by the Commission of Appeals, the following was said:

"The rule is well established that, when a real estate broker is instrumental in bringing together the seller and a purchaser who is acceptable to him, and they consummate a sale and purchase of property on terms that are satisfactory to the seller, this constitutes the agent the procuring cause of the sale, and he is entitled to the commission agreed upon."

That decision and several other authorities containing similar announcements are cited by appellee, such as Branstetter v. Hook (Tex. Civ. App.) 251 S. W. 257; Stone v. Cox, 244 S. W. 621; O'Neil v. O'Neil (Tex. Civ. App.) 258 S. W. 588; Webb v. Harding (Tex. Civ. App.) 159 S. W. 1029; Id. (Tex. Com. App.) 211 S. W. 927; 4 R. C. L. p. 320.

[5] It is settled by all the authorities that, in order for a broker to recover of the owner a commission for a sale of property made by the owner, it is necessary for the broker to show that the services rendered by him were the procuring cause of the sale. That is always an issue of fact to be determined by a court or jury as any other fact. An examination of the authorities just cited will disclose that in using language such as is quoted above from Keener v. Cleveland, nothing more was meant than to say that proof of the facts recited were sufficient to support judgments in favor of brokers in those cases. It would be an unreasonable interpretation to construe the language used in those decisions as meaning that the facts recited in the expression quoted would, as a conclusion of law, constitute proof of a right in the broker to recover, independently of all other issues. It often happens that the broker fails in his efforts to induce the purchaser to make a sale after he has introduced him to the owner, and that a sale is made to the same purchaser by the owner, either alone or through the assistance of some other

broker long after the first broker has abandoned further efforts to make the sale. Under such circumstances what is said in the language quoted clearly would not be applicable.

The decision in the case of Goodwin v. Gunter, 109 Tex. 56, 185 S. W. 295, is the leading authority in this state. What was said in the opinion rendered by Chief Justice Phillips in that case is often quoted and applied, both by the Supreme Court and different Courts of Civil Appeals. The following was said in the opinion in that case:

"It is a general doctrine that, in order for a broker to be entitled to commissions under a contract stipulating for their payment in the event of his sale of given property upon stated terms, a purchaser must have been produced through his efforts, ready, able, and willing to buy the property upon the contract terms; otherwise the contract is not fulfilled upon the broker's part, and the commissions are therefore not earned. But the commissions are earned and the broker is entitled to their payment according to the contract if, *while it is in force*, he procures a purchaser to whom the owner directly makes a sale upon terms which are satisfactory to himself, though different from those limited to the broker and yielding the owner a less amount than that for which the broker was empowered to sell. 'This is but a rule of fairness and right. In such a case the owner receives the full benefit of the broker's effort. Through the diligence of the broker a buyer is produced. Having interested a prospective buyer the broker is entitled to a *fair opportunity* of making a sale to him upon the terms authorized. That the owner, *pending the broker's negotiation*, may in disregard or repudiation of his obligation to respect the broker's right to conclude the transaction, take the matter into his own hands, avail himself of the broker's effort, close a sale upon satisfactory terms, and yet deny the broker's right of compensation, is a proposition not to be countenanced. It is no answer in such a case to say that a purchaser has not been produced by the broker, ready, able, and willing to buy upon the terms limited by the contract, and the owner is, therefore, free to deal with the buyer, though produced by the broker, without any liability to the latter. That becomes unimportant in the face of the outstanding fact that it is by the broker the buyer is produced, and *before his negotiation is concluded*, a sale is made, as the result of his effort, which is presumably just as satisfactory to the owner. The owner will therefore be deemed, in such a case, to have waived the terms to which the broker was confined, and the law declares him liable for the commissions fixed by the contract, for the reason that, except as to such waived provision, the broker's part of the contract has been fully performed. The decisions of this court clearly affirm this principle. It is recognized generally elsewhere; and nothing else could well be the law. Hancock v. Stacy, 103 Tex. 219, 125 S. W. 884; McDonald v. Cabiness, 100 Tex. 615, 102 S. W. 721; Hamburger et al. v. Thomas [Tex. Civ. App.] 118 S. W. 770; Loomis v. Broaddus [Tex. Civ. App.] 134 S. W. 743; Chilton & Cole v. Butler, 1 E. D. Smith (N. Y.) 150.

"A different state of case is presented and, therefore, a different rule prevails where the broker's effort with a particular buyer has, *after fair opportunity and without any fault of the owner*, come to naught, resulting in the failure and termination of his negotiation; and, later, the owner by *direct* and *independent* negotiation effects a sale to the same buyer, though upon the same terms originally authorized to the broker. Under such circumstances the broker cannot be justly considered the procuring cause of the owner's sale, and the latter incurs no liability to him on that account. Pryor v. Jolly, 91 Tex. 86, 40 S. W. 959; Hancock v. Stacy, 103 Tex. 219, 125 S. W. 884." (Italics ours.)

In Pryor v. Jolly, 91 Tex. 86, 40 S. W. 959, which was cited with approval by Justice Phillips as shown above, Jolly, the broker, was employed by Pryor, the owner of 1,500 head of cattle to sell the same for $17 per head cash, the broker to receive $1 per head commission less certain expenses. Jolly found Holden, a proposed purchaser, and introduced him to Pryor, informing the latter at the time that Holden had agreed to buy the cattle at $17 per head cash. Pryor then entered into negotiations with Holden which resulted in a sale of the cattle, the consideration being in part only for cash and the balance evidenced by a promissory note secured by a chattel mortgage on the cattle. A judgment recovered by Jolly for the commission was reversed by our Supreme Court.

In Hancock v. Stacy, 103 Tex. 219, 125 S. W. 884, also cited by Justice Phillips, the following was said:

"In Pryor v. Jolly, 91 Tex. 86 [40 S. W. 959], cited by the plaintiff in error, this court held that, by the terms of the contract between the parties, Jolly had undertaken to furnish a purchaser who would take the cattle and pay cash for them. The facts showed that the proposed purchaser was not able to pay cash for the cattle, and, after considerable effort to secure the money, failed. The agent having failed to furnish a purchaser in accordance with the terms of the contract, and his efforts having come to naught without any fault on the part of Pryor, this court held that the fact that Pryor subsequently sold to the same party for the same price, partly on time and part for cash, did not render him liable to the agent. The agency of Jolly terminated when his efforts failed, after he had been afforded reasonable time and had himself abandoned the effort to comply therewith."

In the following cases judgments in favor of brokers were reversed and judgments were rendered in favor of the owners by the Courts of Appeals to which the cases were carried; and in each of those cases the evidence shows that the broker was the first one to bring the property to the attention of the buyer or else introduced the buyer to the owner, and thus initiated negotiations between them. But the decisions show that the broker was denied a recovery by reason of the further showing that after he had made an unsuc-

cessful effort to induce the buyer to purchase the property and had ceased his efforts to accomplish that result, all without fault on the part of the owner, the sale was then made to the·same purchaser as the result of independent negotiations directly between the owner and the buyer or through the medium of some other broker. Burch v. Hester & Lowhorn (Tex. Civ. App.) 109 S. W. 399; Newton v. Conness (Tex. Civ. App.) 106 S. W. 892; Karr v. Brooks (Tex. Civ. App.) 129 S. W. 160; English v. William George Realty Co., 55 Tex. Civ. App. 137, 117 S. W. 996 (in which a writ of error was denied by the Supreme Court).

For ·the same reasons and under similar circumstances, judgments in favor of brokers were reversed and the causes remanded in the following cases: Duval v. Moody, 24 Tex. Civ. App. 627, 60 S. W. 269; Wilcoxson v. Suddeth (Tex. Civ. App.) 229 S. W. 352.

And, for the same reasons and under like circumstances, judgments denying a recovery by brokers were affirmed by the Courts of Civil Appeals in the following cases: Witt v. Byrum (Tex. Civ. App.) 135 S. W. 687; Knox & Nunn v. Pierce (Tex. Civ. App.) 146 S. W. 703; Aukerman v. Bremer (Tex. Civ. App.) 209 S. W. 261; Herndon v. Williams (Tex. Civ. App.) 233 S. W. 544, opinion by Justice Buck, specifically based upon the abandonment of the contract by the broker, following the decision in Goodwin v. Gunter, supra.

The following excerpt from Duval v. Moody, 24 Tex. Civ. App. 627, 60 S. W. 269, by Justice Neill, has been quoted with approval in later cases:

"It is now the well-settled ·doctrine that in the absence of any usage or contract, express or implied, or conduct of the seller, preventing the completion of the bargain by the broker, an action by the broker for his commissions will not lie until it is shown that he has effected or procured a sale of the property, and it is not enough that the broker has de- .voted his time, labor, or money in the interest of his employer, as unsuccessful efforts, however meritorious, offer no ground of action, and that, where his acts effect no agreement or contract between his employer and the purchaser, the loss must be his own."

[6-8] There is nothing peculiar in the contract of a broker with his principal. It is governed by the laws applicable to the ordinary contract. 4 R. C. L. 320. If the broker voluntarily abandons his efforts, once begun, to find a purchaser for property, or fails to find one within a reasonable time, all without the fault of the owner, then his contract of employment is at an end, and thereafter the owner is at liberty to sell the property to any one, including the purchaser first found by the broker, either by means of negotiations directly with the purchaser or through the medium of another broker. The contract of employment of the broker in the present case was not one of exclusive agency, and under these circumstances the owner had the undoubted right to sell the property independently of the broker. In the present case there was neither pleading nor proof by Lawrence, the appellee, that the sale made by appellant in December occurred during any negotiations then pending between him and the Empire Gas & Fuel Company for a' sale, nor that he was prevented from consummating the sale by any fault on the part of appellant. On the contrary, the testimony of appellee shows conclusively that after the passing of the summer of 1923 he ceased further efforts to induce the Empire Gas & Fuel Company, through its agent, Mr. Fenoglio, to buy the lease; in fact, he paid no further attention to the matter. It was further shown by uncontroverted proof that about October of the same year, and perhaps a little later than that month, Fenaglio received a letter from the principal office of his company requesting him to look out for a tract of land suitable for core drilling, and that, in obedience to that request, he entered into negotiations directly with appellant, which resulted in the sale on December 3, 1923, all without any assistance whatever on the part of appellee and even without his knowledge.

Under such circumstances, we conclude that the proof shows without controversy an abandonment by the appellee of his contract to find a purchaser for the property, and that after such abandonment the appellant effect the same solely through his own efforts. To permit a recovery by appellee under such circumstances clearly would be in violation of the law of contract, which is invoked by him in this suit.

And, since the facts seem to have been fully developed upon the trial of the case, the judgment of the trial court is reversed, and judgment is here rendered in favor of appellant.

BUCK, J. (dissenting). Since the majority has reversed and rendered this case upon the facts, the writer will briefly note the facts which in his opinion sustain the judgment below: (1) It is not questioned that appellant placed the land in the hands of appellee for the sale of the lease. (2) It is not questioned that, at the time appellee assumed the employment, appellant had never met Fenoglio, the manager of the Empire Gas & Fuel Company, and had never broached to any representative of the company the matter of leasing the land to it. (3) Appellee at various times talked to Fenoglio about leasing the land from January, 1923, to July of that year. (4) It is further supported by the evidence, the writer thinks, that when Fenoglio, in November, upon his company's instruction to secure a lease on some large acreage for the purpose of core drilling, approached Parkey on the matter of securing a lease of his land, he did so upon the in-

formation he had secured from Lawrence that Parkey had land to lease, and as the result of the efforts of Lawrence to effect a sale.

The writer thinks that the evidence is sufficient to sustain the finding of the trial court that the efforts of Lawrence were the procuring cause of the lease finally consummated, upon terms satisfactory to Parkey.

Justice Dunklin, in the majority opinion. cites, among others, the case of Herndon v. Williams, 233 S. W. 544, opinion by the writer. In that case we affirmed the judgment below, and held that, where the testimony is conflicting, the Court of Civil Appeals, in deference to the trial court's finding must accept as true the testimony which supports the judgment. The writer invokes the same well-known rule in support of his view that the judgment in the instant case should be affirmed. He thinks that the case of Keener v. Cleveland, 250 S. W. 151, by the Commission of Appeals, and other cases to the same purport, support the judgment below, and that such judgment should be affirmed.