LANGER et al. v. AYCOCK.  (No. 1474.)

(Court of Civil Appeals of Texas. Amarillo. Feb. 5, 1919.)

1. BROKERS  ⚖⇒56(3) — COMPENSATION — PERFORMANCE OF SERVICES — TIME SPECIFIED.

A broker, whose right to sell is limited to a specified time, and who effects no sale within that time, is not entitled to commissions, though the owner later sells to one with whom the broker has been negotiating, provided the owner does not fraudulently terminate the contract or prevent a sale by the broker.

2. BROKERS  ⚖⇒56(3) — SALE WITHIN TIME SPECIFIED—FRAUD.

That the principal, after the expiration of the time to which the sale of certain land was limited, entered the broker's office and represented himself as another, does not indicate such bad faith or fraud on his part, interfering with the right given the broker to sell within the time specified, as to permit recovery for a sale made direct with the principal after termination of agency.

Appeal from District Court, Sherman County; Reese Tatum, Judge.

Action by George L. Aycock against Peter Langer, Jr., and others. Judgment for plaintiff, and defendants appeal. Reversed and rendered.

W. I. Gamewell, of Stratford, for appellants.

Tatum & Strong, of Dalhart, and J. W. Elliott, of Stratford, for appellee.

HALL, J. This is a suit by appellee to recover commissions alleged to be due him as a real estate broker upon the sale of two sections of land belonging to appellants.

A number of questions are presented under five different assignments, but we deem it unnecessary, as we consider the case, to set out at length the pleadings or the issues. It appears that on October 3, 1917, Peter Langer, Jr., as part owner and agent for his co-owners, wrote to appellee, giving him the right to sell the two sections of land for $8,000 each, terms net cash to the owners, and stating that no commissions would be paid out of the purchase price named. No sale was made within 30 days. On February 28, 1918, appellee wrote Langer, asking that the land be listed with him again for 30 or 60 days. On April 25, 1918, appellee wired Langer as follows:

"I am closing cash deal on your recently made. Will write you fully as soon as I get home Monday and will send deeds made up."

On the following day he wrote Langer as follows:

"When I wired you yesterday that I was closing deal on your two sections of land, I felt sure that I would be able to close yesterday; but the father of the young man who was making the purchase had concluded to look the land over personally before approving of the deal. This he has agreed to do within the next 10 days. I feel very confident that I will be able to successfully close the deal within a very short time, and inasmuch as I have already spent a great deal of money trying to close the transaction, I will ask that you kindly withhold the same from the market until the 5th of May."

On April 27, 1918, appellee wired Langer as follows:

"I can close sale on survey 132, contingent upon lease for immediate use your survey 140 as it stands, including water plant and house; lease to run one year at a time. Absolute state definite lease rate. Wire answer to-day."

On April 29th appellee again wired Langer:

"Have showed land again and am only able to close on section 132 at price and terms quoted in previous correspondence, conditioned on leasing to them section 140, as outlined in my message of yesterday. Please wire me authority to close. Wire answer."

On April 29th, Langer wired appellee as follows:

"Parties owning section 132 will sell for $8,000 net cash. Section 140 same price. Offer expires May 5th. Will not lease."

[1] These letters and telegrams constitute the contract between the broker and the principal, and clearly limit the agency of the broker to May 5th; and it is equally clear that the owners will not lease section 140, but that the broker is authorized to sell either or both sections at $8,000 cash, net to the own-

---

ers. We have reviewed the record, read the statement of facts, and have concluded that upon two grounds the judgment should be reversed and rendered.

First, the rule is well settled that when, by the contract, the broker's right to sell is limited to a time certain, he is not entitled to commissions if no sale is effected within that time, even though the owner sells to one with whom the broker has been negotiating, unless the owner has fraudulently terminated the contract or prevented a sale by the broker within the time specified. No such fraud is shown in this case. The owner is under no obligation to extend the time in favor of a prospective purchaser found by the broker. 9 C. J. 606, § 22; 4 R. C. L. 251, § 8; Hodde v. Malone, 196 S. W. 347; Hardesty v. Cavin, 149 S. W. 367; Hancock v. Stacy, 103 Tex. 219, 125 S. W. 884; Neal v. Lehman, 11 Tex. Civ. App. 461, 34 S. W. 153.

[2] The only fact proven in any way tending to show fraud is that Peter Langer came to Texas from his home in Wisconsin after the 5th day of May, and on the 13th day of May entered appellee's office and introduced himself as Mr. Peterson from Wisconsin. No bad faith or fraud on his part, interfering in any way with the right given appellee to sell prior to May 5th, was shown.

Upon this ground the judgment must be reversed and rendered; and there is a further ground, which we think precludes appellee from recovering. The letters and telegrams above set out show an express contract of sale (Overshiner v. Palmer, 185 S. W. 387); and in this case, as in that, the terms given were net to the owner. Appellee has failed to show that Breakey, the proposed purchaser, ever at any time prior to the 5th of May agreed to purchase the land upon the terms listed.

Reversed and rendered.