## DALTEX CATTLE CO. v. HILL et al.
### No. 3660.

Court of Civil Appeals of Texas. Amarillo.
Oct. 21, 1931.

Rehearing Denied Dec. 2, 1931.

Leachman, Gardere & Bailey, of Dallas, for appellant.

Frank J. Ford, of Vega, for appellees.

RANDOLPH, J.

There was filed in the district court of Deaf Smith county on May 7, 1930, a suit by the Daltex Cattle Company against J. E. Hill and J. C. Ricketts, trading under the firm name and style of Hill & Ricketts Company—the cause taking the number 1813 on the docket of said court—wherein the plaintiff in its petition filed in that suit set out its cause of action substantially as set out in the petition in this suit.

E. E. Gose and R. R. Gilliland were made parties defendant, because of their claiming certain sums as commission for the final sale of the lands.

A default judgment was rendered in this cause by the Trial Court in favor of defendants Hill & Ricketts for commissions claimed for the sale of certain lands for the Daltex Cattle Company and such default judgment was set aside.

It was agreed by the parties that the petition in this case wherein it is sought to set aside and vacate such judgment be sustained, and that the court shall set aside and vacate said judgment in said cause No. 1813—which was accordingly done by the judgment in this case. Consequently there is no question presented to this court involving the rendition or setting aside of the former judgment in cause No. 1813.

In the case at bar, the questions for our consideration are: (1) Construction of the contract by which the plaintiff employed defendants Hill & Ricketts to sell its land; (2) was such contract terminated by the plaintiff; and (3) had the defendants abandoned any attempt to sell the land at the time the plaintiff sold it (the Texas land) to Perrin Bros.; and like propositions as applied to the New Mexico land sold to Bivins.

■ The original contract entered into between plaintiff and defendants Hill & Ricketts as to the sale of the Texas lands, known as the Joss place, was terminated by the plaintiff in a letter dated April 19, 1928, as they had provided in said original contract. J. E. Hill, one of the firm of Hill & Ricketts, testified as to the original listing of the land with his firm by the plaintiff and its termination, and then testified that the Daltex Cattle Company listed with them for sale the 5,516 acres of the Texas land known as the Joss place. It appears from the record that the land was listed with Hill & Ricketts for them to sell it at a price of $15 per acre upon which they were to get 5 per cent. commission. Also, later, that $1 per acre was added to this as an allowance for commission to Gose for his services as broker in bringing the purchaser to Hill & Ricketts, making $16 per acre the selling price of the land. It is apparent that the contract for the commission between the parties was not that the agents should find a purchaser who was ready, able, and willing to buy the land, but that the contract was that the agents were to sell the land and to receive 5 per cent. commission on the $15 per acre when they did so. As to the basis upon which the claim was made, Mr. J. E. Hill of the defendant firm frankly states: "Yes, I had an agreement as to what I was to receive for my compensation for that land. My agreement with the Daltex Cattle Company was—

it was agreed between us, that ·my compensation was to be five per cent. commission on the sale price of the land, the price the land sold for, whatever price it would sell for. I had a price of $15.00 per acre. I was to get five per cent. commission on that, but they allowed me an extra commission of $1.00 per acre which was to go to the broker. If we, the Hill-Ricketts Company, sold the lands ourselves, we were to get five per cent. commission on the sale price of the land; and if somebody else brought us a buyer, they were to get $1.00 commission out of the sale price of the land."

It is apparent, therefore, that the 5 per cent. commission was due Hill & Ricketts only in the event of a sale upon the terms under which the land was listed.

The answer of Hill & Ricketts claims that they were the efficient and procuring cause of a sale of the Joss place, the Texas land, to Perrin Bros. The listing of the land by the plaintiff with the defendants was upon the basis of a cash payment of $25,000 and the balance in certain vendor's lien notes. This ·Hill & Ricketts did not do, for it appears from the evidence that a third party who was to furnish the $25,000 cash refused to furnish it, and the trade upon that basis fell down, and Perrin Bros. refused to sign the written contract sent them by Hill & Ricketts through the broker Gose, or at least did not sign it. Hill & Ricketts wrote to Mitchell, the president of the plaintiff company, on September 24, 1928, the following letter:

"Hereford, Texas, Sept. 24, 1928.
"Mr. Homer R. Mitchell, President, Daltex Cattle Company, 406 Interurban Building, Dallas, Texas.

"Dear Mr. Mitchell: I have been in Kansas the last thirty days and I find that the men who were buying the Joss Place, before they signed the contract that I sent them after they said they would buy on the terms outlined in the contract, someone of their party claimed that some real estate man had told them that they could buy the land at $14.00 per acre and there is not any doubt in my mind but what some scalawag told them that. I have heard the same remarks and that is the trouble about various parties handling a proposition. Some people are small enough that if they find that they cannot sell a proposition they like to get in the way of someone else and we have a good many men who claim to be real estate men that will say or do anything without any justification.

"I have some other men lined up whom I think we will be able to sell to, and I am going to try hard to get a contract and some money as soon as possible. If you will agree with me, I would like for you to do this. In case I call you by 'phone, if you are not in have Higgins to authorize me, after I tell him about the deal by 'phone to sign the contract as your agent. If I had had this authority while these men were here I could have got the contract signed by them and signed it myself and got their money. I find that in most cases when men are out away from home to buy land they want to buy something they can get closed up on while they are out. Of course, in this case I would outline to you or Higgins by 'phone the price, amount of cash and the terms and the rest of the contract would be in our general form in regard to time for making abstract and the examining of same—the same as the balance of our contracts.

"I am the only one that has sold any of your land so far, and if other folks would have kept their hands off, we would have already have all of your land sold, your money in the bank and notes drawing interest. I am real anxious to get this job over with.

"Very truly yours,
"[Signed] Hill-Ricketts Realty Company
"By J. E. Hill."

On October 2, 1928, E. E. Gose, the broker living in Quanah, and the one who was to get the $1 per acre which was added to the purchase money as his commission in the event of sale, and who had furnished Perrin Bros. as possible purchasers, wrote Hill & Ricketts the following letter:

"Quanah, Texas, Oct. 2, 1928.
"Hill-Ricketts Realty Company, Hereford, Texas.

"Dear Mr. Hill: I regret very much that we were unable to close our trade with the Perrins on the Deaf Smith County stuff but the third party whom they expected to join them in this deal after checking up on the matter was unwilling to make his part and so our friends did not care to handle so large a tract. In the meantime somebody got to them with this $14.00 price and that seems to have completely upset the matter.

"I do not think you need hold the matter open longer for them. However, I am still in touch with them and might still be able to sell them a portion of your tract if you subdivide it or perhaps we might be able to interest them in something else you have. I will let you know soon if they are further interested. Your letter should have been answered sooner but I was out of town and the matter could not be attended to earlier.

"Yours very truly,
"[Signed]    Emory E. Gose."

After his return from Kansas, and after sending the letter of September 24, 1928, it appears from the record that Mr. Hill, or the firm of Hill & Ricketts, made no further efforts to close the deal with Perrin Bros., but testifies that he based his right (Hill & Ricketts) to a commission on the fact that he showed the land to Perrin Bros. on August 22d.

Soon after the defendants Hill & Ricketts had notified the plaintiff that he had sold its land, upon the terms of $15 per acre and balance in vendor's lien notes, as per its instruction, the plaintiff mailed abstracts to them. After receiving the letter of September 24, 1928, from Hill & Ricketts, the plaintiff requested and received the return of same from Hill & Ricketts.

Gose testified as to the sale of the land to Perrin Bros. after they failed to raise the $25,000 cash; that he was looking after some business for Perrin Bros. concerning a farm loan; that he was passing through their home county the latter part of October, and stopped to talk to them in regard to these other matters. The sale of the land to them, he testified, had been completely dismissed from his mind. Further, he testified: "As to thinking I could still close the deal and sell this land— I had forgotten it, as I knew and had been told that they could not raise the $25,000.00 cash payment at that time."

After discussing the business that he (Gose) had stopped to see Perrin Bros. about, they asked him if he would not go and see the owners of this property (the Texas lands) and find out from them if there was any possible way of getting the land on a crop payment basis, that is, a crop payment plan, and he told them, Perrin Bros., that he would see plaintiff and see if anything of that kind could be worked out. He saw Andrews, the vice president of plaintiff, about November 15, 1928, and told him about his furnishing Perrin Bros. as possible customers to J. E. Hill, who took them out to see the land during the month of August, told him about the third party, a Mr. Ballard, who was to furnish the $25,000, but that Ballard would not put the cash in it, and that the deal was off; Mr. Hill having informed him that that amount would have to be paid. Gose also told Andrews that he had come to Dallas to see him at the request of Perrin Bros., who asked him if there was any chance of acquiring this property on a crop payment basis. Andrews at first told him there was no chance whatever, and he took his hat and started to leave, and did leave. Then he came back at the request of Perrin Bros., and asked Andrews if it was possible to purchase the land. He told Andrews that Perrin Bros. were very capable men; that they wanted the place, and would probably trade if they could make a successful deal; it would result in them buying the land.

It appears that Perrin Bros. could not get the money ($25,000).

These conversations began on November 10th and continued until the 15th of November, but the contract which was finally signed in January, 1929, was not agreed on at that time. The deed from plaintiff to Perrin Bros. conveying the Joss place was delivered in February, 1929, and recorded on February 13, 1929, in the Deed Records of Deaf Smith county.

The witness Gose testifies that he told Andrews why the original sale to Perrin Bros. was not consummated.

On February 20th, after the sale to Perrin Bros. had been consummated by delivery of the deed, the plaintiff executed its written obligation as follows:

"Mr. E. E. Gose, Quanah, Texas.

"Dear Sir: I am writing to confirm to you our oral understanding and agreement with respect to the commission due you on sale of 5,516 acres of land, Deaf Smith County, Texas, to J. C. Perrin and C. S. Perrin.

"We are to pay you $4,766.00 as commission out of the proceeds of three vendor's lien notes of approximately equal amounts aggregating $49,772.00. The amount due you will be paid to you at the rate of ten per cent. of the amounts realized from these notes whether by sale to purchasers or by collections from the makers.

"Yours very truly,
"[Signed]    Daltex Cattle Company,
"Homer R. Mitchell, President."

If the original contract of sale had been consummated by Hill & Ricketts, Gose would have been entitled to $1 per acre upon the land in the Joss place, or $5,516. This commission which was to have been paid had no relation to any part of the commission of 5 per cent., provided for Hill & Ricketts, but was the sum of $1 per acre added to the price of the land.

█ As to the commission alleged to be owing to Hill & Ricketts on the sale of the Joss land, it will be noted that they did not produce a purchaser ready, able, and willing to buy the land on the terms of the special listing with Hill & Ricketts; that Hill & Ricketts did not consummate a sale upon said terms; that Hill & Ricketts had abandoned any effort to consummate the sale before Perrin Bros. renewed their negotiations for the purchase of same; that the parties produced by Gose, Perrin Bros., with whom Hill & Ricketts made the alleged sale, were the ones who initiated the second contract of sale with the plaintiffs; that, so far as the records disclose, there never was any action on the part of the plaintiff to interfere with the execution of the original agreement, and there was no effort on their part to renew the negotiations with Perrin Bros.; and that the negotiations which resulted in the sale was the result of the efforts of Perrin Bros. to secure the land, upon terms entirely different from the original listing with Hill & Ricketts.

Therefore, as to the defendants Hill & Ricketts' claim for commission on the sale of the Joss place, we hold that the said defendants wholly failed to establish a cause of ac-

tion. Pryor v. Jolly, 91 Tex. 86, 40 S. W. 959; Goodwin v. Gunter, 109 Tex. 56, 185 S. W. 295, 195 S. W. 848; Parkey v. Lawrence (Tex. Civ. App.) 284 S. W. 283; Rogers-Hill & Co. v. San Antonio Hotel Co. (Tex. Civ. App.) 7 S.W.(2d) 601; Griffith v. Shofner (Tex. Civ. App.) 184 S. W. 340, and authorities therein cited; Duval v. Moody, 24 Tex. Civ. App. 627, 60 S. W. 269; Herndon v. Williams (Tex. Civ. App.) 233 S. W. 544.

We will now consider the claim for commissions made by the defendants Hill & Ricketts upon the sale of the New Mexico lands to Lee Bivins.

It appears from the record that as early as October 21, 1927, the defendants Hill & Ricketts began making efforts to sell the land to Bivins & Bruner. It also appears from the record that Bivins & Bruner were partners in some land investments, and that Bruner was representing Bivins in others. When Bivins was approached by Mr. Hill, Mr. Bivins referred him to Mr. Bruner who was to investigate the land. After Bruner had made this investigation, he offered Hill $4 per acre for the land. This was all the bid that Hill & Ricketts could get out of Bruner.

On December 14, 1927, Hill & Ricketts wrote the plaintiff the following letter:

"I received your telegram Sunday, received your letter of December 12th, this morning.

"Now Mr. Andrews, I realize most thoroughly that I am at a loss to know what to say in connection with the deal with Bruner.

"Now in regard to Mr. Bruner, I used the very best judgment that I had when I went to see him, I have made a good many deals in my life enough that I now realize that there is lots that I do not know. When I approached Mr. Bruner on this deal and he wanted to know what the price was when I told him $7 per acre there is not any doubt in my mind but what Bruner was just as much disappointed as you people when you received his bid of $4 per acre. I would have liked very much for you to have been present. I told him that I realized that he had bought some scattered land in there at around $2 per acre which had nothing in the world to do with the establishing of values on land.

"I did my best to get Bruner to actually try to buy the land and after he had bid four dollars and owing to the fact that you people were asking seven and since I have had a good deal of experience in making deals all of my life I knew the only way in the world the deal could be made, if made, was to get you and him together, because I had no authority from you people to offer the land at less than $7 and that was the reason why I wired you to come, but of course if your people do not want to take less than $7 per acre for the land there is no one on earth that has a right to blame you for it, it is yours, and you have as good a right to do with your property as you please as anyone else. I was of the impression that you wanted to sell this land. I was doing my best according to my best judgment. I have not seen Mr. Bruner since the day I had conference with him which was on the 6th of this month."

It will appear from this letter that the price of the land as given Hill & Ricketts was $7 per acre, and further that they had no authority to offer it at a less price, and that Mr. Bruner would not offer more than $4 per acre.

On April 19, 1928, plaintiff wrote to Hill & Ricketts, claiming that they had the right to terminate their agency, and expressly advised them: "That our agreement with you for the sale of the land is hereby terminated."

On the trial of this case, W. L. Batson of Endee, N. M., who was a real estate agent, testified that for eighteen months before the sale of the New Mexico land he had been trying to sell it to Bivins & Bruner. He again wrote to the plaintiff about two months before the same was made. He further testified: "As to what I then did about trying to sell this land;—I had been blocking up lots of land there for Messrs. Bivins and Bruner, so I went to see Mr. Bruner. You are asking me: 'Are you talking about each of them individually, or as a co-partnership?'—well, all the deals I made before over there in land matters, up to this time, had been with Mr. Bruner, so I went to see Mr. Bruner and I offered this land to him and he informed me he did not want the land. He just made the remark: 'I would be a fool for buying it when I can lease it—you can't sell it to no one else anyway.' The matter rocked along until about thirty days after this, when I was in Mr. Bivins' office transacting some cattle business and I brought to Mr. Bivins the subject of this land matter. This was in his office in Amarillo, Texas. He asked me to mark this land out, so I did mark it out to him and I insisted on him buying it. At first he said he would not be interested and I told him I had had it for sale and that, of course, I was offering it to him first and that if he did not buy it, I was going to sell it to the first man I could find that would buy it. I told him that it was land adjoining some of his land then. He asked what we would take for the land and I told him I thought possibly that it could be bought at a price around $5.00 or $5.50 per acre. He studied over the matter awhile and then stated to me: 'I believe I will take a shot at that land at $4.' Then, I took the matter up with the Daltex Cattle Company—and at that time, I don't remember, but I believe I got a letter from them in a few days. I believe the letter was from Mr. Higgins, with the Daltex Cattle Company, telling me that he would meet me in Amarillo on a certain date, but they would not accept the $4 per acre proposition, but he told me he would meet me up there and

try to deal with me on this land. So, at this date, well, I don't remember the date, but the date we agreed upon, I met him there in Amarillo. We see-sawed around there and we finally got together for a little better than $4 or $4.20—I believe it was something like that."

This sale was finally consummated by deed of September 12, 1928, for a consideration of $29,700.

From this brief statement it will be observed that the defendants Hill & Ricketts never produced a purchaser who would offer anything like the sum of $7 per acre for which it was listed with them, and that their special listing and agency was terminated about five months before the sale. Further, the land was finally sold for $4 per acre net to plaintiff; Bivins paying Batson's commission. Hill & Ricketts' commission upon the price for which the land sold to Bivins would have been, at 5 per cent., $1,485. It will be seen, therefore, that the actual sale to Bivins was $1,485 more than they would have received if they had had to pay Hill & Ricketts their commission, and therefore to them the real consideration they received was in excess to that extent.

█ We find, therefore: First, that the defendants Hill & Ricketts never found a purchaser for the sum of $7 per acre, for which the land was listed with them; that they never closed a deal for the sale of the land upon the listed terms at all; that they were not the procuring cause of the sale; that their agency was terminated long prior to the actual sale of the land; that another agent was the procuring cause of the sale; and that said other agent actually made the sale. Further, that there was no fraud shown on the part of the plaintiff.

█ In the case of Garonzik v. Green (Tex. Civ. App.) 275 S. W. 184, the rule is laid down that, where the agent's right to sell is limited to a time certain, he is not entitled to commissions if no sale is effected, within that time, even though the owner subsequent to the expiration of the exclusive agency sells to one with whom the agent has been negotiating, unless the agency was terminated fraudulently, or the owner prevented a sale by the agent within the time specified. See, also, Langer v. Aycock (Tex. Civ. App.) 209 S. W. 199, 200; Neal v. Lehman, 11 Tex. Civ. App. 461, 34 S. W. 153.

We therefore hold that the defendants Hill & Ricketts were not entitled to commissions in the matter of the sale of the Texas land, known as the Joss place, and were not entitled to any commissions for the sale of the New Mexico lands; that as to said two commissions the judgment of the trial court will be reversed and here rendered in favor of the plaintiff for said sums which are in the hands of defendants Hill & Ricketts, but as to said judgment wherein defendants Hill & Ricketts recovered $360 as commission on the sale of lands to one Larson and the sum of $100 expenses on a trip to Dallas, be, and the same is hereby, affirmed.

Judgment will therefore be rendered in favor of the plaintiff for the sums of $4,137 and $1,445, aggregating $5,582, less the sums of $360 and $100, aggregating $460—leaving a balance in favor of the plaintiff of $5,122, for which plaintiff shall recover judgment accordingly.